609 P.2d 1256

STATE of New Mexico,
Plaintiff-Appellee,

v.

Robert ROMERO, Defendant-Appellant.

No. 4311.

Court of Appeals of New Mexico.

April 8, 1980.

Rehearing Granted March 28, 1980.

John L. Walker, Teel & Walker, P. A., Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Walter G. Lombardi, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## ON MOTION FOR REHEARING

The State has filed a Motion for Rehearing. We grant the Motion for Rehearing. The former opinion is withdrawn and the following is substituted.

## OPINION

HENDLEY, Judge.

Convicted of two (2) counts of residential burglary, three (3) counts of armed robbery, one (1) count of contributing to the delinquency of a minor and one (1) count of receiving stolen property, defendant appeals. His first point of whether plain error was committed when the prosecutor questioned the defendant regarding his post-arrest silence is dispositive of the appeal. We reverse and remand for a new trial.

Defendant took the stand on his own behalf. He presented an alibi defense to each charge. He admitted that he had pled guilty of receiving stolen property (rifles) and as to that charge, he at no time denied the charge, attempted to fabricate a story, and had admitted the charge when first questioned by the police. He then stated: "Yes, sir, I would" in response to a question of "If you committed these crimes [referring to the instant charged offenses], would you plead guilty today?".

On cross-examination, the following occurred:

Q. As far as Chris, he is *mistaken* on all of these nights he says you were involved?

A. I think he is lying.

Q. When you were arrested by Detective Johnnie Brown on the warrant

for these eight different counts, why didn't you explain to her what had really happened and what the *mistakes* were?

A. I had nothing to say for my own protection.

Q. At the preliminary hearing, did you take the stand and testify to explain the *mistakes*?

MR. HARRISON: Your Honor, I object.

THE COURT: Sustained.

Q. When is the first time you have told the story that you have just told today?

A. Right now to you.

MR. JOLLEY: That's all.

(Emphasis ours.)

*State v. Lara*, 88 N.M. 233, 539 P.2d 623 (Ct.App.1975), held that, if defendant's silence lacks significant probative value, any reference to defendant's silence has an intolerable prejudicial impact and is plain error requiring reversal, even though raised for the first time on appeal. Subsequently, our Supreme Court in *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976), found a distinction between those comments directly attributable to questioning of the defendant by the prosecutor and those comments incorporated within the testimony of a witness and held that comment of the latter type would not constitute plain error, but would only be reviewable where there was a timely objection made in order to preserve the error.

■ The State argues that the post-arrest silence had significant probative value. We disagree. From a reading of the questions, it is apparent that they go solely to defendant's alibi testimony as opposed to Chris' testimony. This was a direct comment on defendant's post-arrest silence. Post-arrest silence will never have any significant probative value when used in an attempt to impeach an exculpatory story presented at trial. However, as pointed out in footnote 11 of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976):

It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

We hold that the questions come squarely within the holding of *Lara*—plain error—and not the exceptions of *Baca* or *Doyle*.

A similar exception is cited by the State's reference to *United States v. Mavrick*, 601 F.2d 921 (7th Cir. 1979). There, the defendant on direct examination stated that he had attempted to explain his conduct at the time of his arrest, but was told to "shut up". On cross-examination, the prosecutor asked if later he had been given the opportunity to explain. The court found no error in the question because:

Although such an inquiry may ordinarily be improper because it tends to elicit testimony about the defendant's silence, here the defendant himself raised the issue of his opportunity to explain during his testimony on direct. . . .

We view this case as similar to those decisions permitting the government to use a defendant's post-arrest silence to impeach his assertion that he had cooperated with police after his arrest. *See United States v. Fairchild*, [505 F.2d 1378 (5th Cir.)] *supra; United States v. Conlin*, 551 F.2d 534, 536–37 (2d Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977); *Stone v. Estelle*, 556 F.2d 1242 (5th Cir. 1977), *cert. denied*, 434 U.S. 1019, 98 S.Ct. 742, 54 L.Ed.2d 767 (1978). These cases seem to fall squarely within the exception mentioned in footnote 11 of *Doyle* permitting impeachment of the defendant's version of his post-arrest behavior. . . .

■ From these cases, it is clear that the prosecution may not use the defendant's

silence at the time of his arrest to impeach an exculpatory story which the defendant presents at trial. The reason is that the "silence is insolubly ambiguous".

Prosecutors should heed the warning of *United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978), that:

> [T]he comment upon silence of the accused is a crooked knife and one likely to turn in the prosecutor's hand. The circumstances under which it will not occasion a reversal are few and discrete. We

suggest that it be abandoned as a prosecutorial technique.

Reversed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.