837 P.2d 1366

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**James HENNESSY, Defendant–
Appellant.**

**No. 12847.**

Court of Appeals of New Mexico.

June 23, 1992.

Certiorari Denied Aug. 3, 1992.

Tom Udall, Atty. Gen., William McEuen,
Asst. Atty. Gen., Santa Fe, for plaintiff-
appellee.

Mark H. Donatelli, David Henderson,
Rothstein, Bennett, Donatelli, Hughes &

Dahlstrom, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals his conviction for trafficking cocaine. He contends that (1) there was not substantial evidence to support his conviction, (2) his trial should have been severed from his codefendant's, and (3) the prosecutor impermissibly commented on his postarrest silence. Because we reverse and remand for a new trial on the issue of comment on silence, we also address the claim of insufficiency of the evidence. *See State v. Santillanes*, 109 N.M. 781, 790 P.2d 1062 (Ct.App.1990) (court addresses substantial evidence issue because that would afford greater relief).

### FACTS

Law enforcement officers obtained a warrant to search codefendant's (Montoya's) home. The affidavit in support of the search warrant contained hearsay statements from a confidential informant (CI) stating that (1) Montoya would receive a package of cocaine from Los Angeles on December 1, 1989; (2) within the previous twenty-four hours the CI had seen approximately two ounces of cocaine at Montoya's home; (3) the CI had personally witnessed three drug sales by Montoya within the past twenty-four hours; (4) the CI knew Montoya sold cocaine from his home; (5) the CI was familiar with the appearance of cocaine; and (6) the CI had purchased cocaine from Montoya in the past.

When the officers arrived to serve the warrant, they persuaded Montoya to leave the house before informing him of the purpose of their visit. Two officers entered the house and searched for other occupants. In a back bedroom, one officer observed a trunk with a scale on top of it. On top of the scale were a plastic bag with a white powdery substance and some paper "bindles" used to package cocaine. The officer testified that he saw defendant sit-ting on a box facing the scale and holding the weighing tray from the scale in his hand. Defendant and Montoya were placed under arrest. A further search of the house revealed weapons, more bindles, chemicals used to cut cocaine, and other cocaine paraphernalia. The paraphernalia and a pistol were found in Montoya's bedroom, and Montoya acknowledged ownership of those items.

Defendant's argument at trial was that he was only at the house to purchase a small quantity of cocaine for personal use, and that Montoya was the dealer. He testified that Montoya left the room to answer the door, that he did not touch the cocaine while he waited for Montoya to return, and that he was not holding the scale tray when the officers entered the room.

## SUBSTANTIAL EVIDENCE

■ On appeal, defendant argues that there was insufficient evidence that he had control over the cocaine, and therefore insufficient evidence that he possessed the cocaine with the intent to distribute. We disagree.

Defendant's presence in close proximity to the cocaine is a circumstance the jury could consider when deciding whether defendant had control of the substance. *See United States v. Kincade*, 714 F.2d 1064 (11th Cir.1983). In addition, the officer's testimony that defendant was holding the weighing tray of the scale in his hand supports the jury's determination regarding this issue. *Cf. Sanchez v. State*, 288 Ark. 513, 707 S.W.2d 310 (1986) (when the defendant was present in a room containing drugs and paraphernalia and the defendant had a gun, the evidence was sufficient to show control over the contraband). Finally, the presence of the bindles and scale is substantial evidence of an intent to distribute the cocaine. On appeal, we view the evidence in the light most favorable to the verdict, indulging all inferences in favor of that verdict. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988). The jury was not required to credit defendant's testi-

mony. *See State v. Vigil*, 87 N.M. 345, 350, 533 P.2d 578, 583 (1975). We hold that substantial evidence supported the verdict in this case.

## COMMENT ON SILENCE

After defendant was arrested and given his *Miranda* warnings, he told the arresting officers he was just at Montoya's house to borrow some tools. At trial, he testified that he was actually there to purchase cocaine for personal consumption. During the state's cross-examination of defendant, the prosecutor focused on defendant's failure to contact the police after his initial encounter with them in order to correct his original postarrest statement. This section of the prosecutor's cross-examination proceeded as follows:

Q.: Did you ever change your story to the police?

A.: No, sir.

Q.: You never went back and said, "Look, guys, I lied to you, I was really there to pick up ...

A.: No, sir.

Q.: ... pick up some [inaudible]?" Is there some reason for that?

A.: I was scared.

Q.: Oh. I can understand that, at the time. What about the preceding, or the next nine months?

A.: Well, they never contacted me.

Q.: Their phone number is rather available, isn't it?

A.: Yes, sir, it is.

Q.: Did you ever contact them?

A.: No, sir.

Q.: Is there some reason you didn't contact them and tell them the truth?

A.: I—I just.... After I got arrested, I was just scared. You know, all I wanted to do was get an attorney and find out what my rights were, like what was going to happen to me.

Q.: Okay. But you never went back and told them the truth, did you?

A.: No, sir.

Q.: Or, you never went back and told them what you told us today, did you?

A.: No, sir.

Defendant did not object to any of these questions. However, apparently attempting to mitigate their effect, defense counsel briefly referred to the questions on redirect examination and elicited the fact that after defendant's arrest, she had counseled him "not to say anything to anybody about the case." In closing argument, the prosecutor alluded to his cross-examination and defendant's testimony on redirect examination, stating that defendant "never bothered" to tell the police the truth and that his excuse was that his lawyer told him not to tell the truth. He then remarked that defendant was doing the same thing at trial—not telling the truth. Defendant did not object to these comments.

Defendant maintains that the above questions and arguments were comments on his right to remain silent because they implied that he had a duty to return to the police and correct his original, admittedly false statement. Because neither the questions nor the closing remarks were objected to, defendant asks us to review the issue either as one of plain error or under the doctrine of fundamental error.

Before turning to the merits of defendant's claim, we briefly review the development of case law in this area. Twenty-seven years ago, the New Mexico Supreme Court adopted the holding of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and acknowledged that prosecutorial comment on a defendant's right to remain silent at trial constitutes reversible error. *State v. Miller*, 76 N.M. 62, 412 P.2d 240 (1966). Following *Griffin*, the United States Supreme Court decided *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), reversing the defendants' convictions on the basis of prosecutorial questions pertaining to the defendants' postarrest silence. Prosecutors in this state have been on notice for more

than fifteen years that such comments are improper, as this court and our supreme court have repeatedly disapproved such tactics and have held that prosecutorial comments on the right to remain silent warrant reversal, whether objected to or not. *See State v. Lara,* 88 N.M. 233, 235, 539 P.2d 623, 625 (Ct.App.1975) (following *Hale*), *limited by State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976) (distinguishing between comments directly attributable to the prosecutor and comments by witnesses during their testimony); *see also, e.g., State v. Martin,* 101 N.M. 595, 686 P.2d 937 (1984); *State v. Ramirez,* 98 N.M. 268, 648 P.2d 307 (1982); *State v. Callaway,* 92 N.M. 80, 582 P.2d 1293 (1978); *State v. Lopez,* 105 N.M. 538, 734 P.2d 778 (Ct.App. 1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987); *State v. Romero,* 94 N.M. 300, 609 P.2d 1256 (Ct. App.1980). Our sense of these cases is that the remedy of automatic reversal regardless of objection is designed, in significant part, as a prophylactic measure to deter prosecutors from obtaining convictions by unfair tactics. A review of cases addressing claims of prosecutorial misconduct, including comments on silence and other blatant misconduct such as reference to inadmissible, highly prejudicial matters, reveals that serious misconduct has been reviewed variously as a claim of (1) plain error, (2) deprivation of the right to fair trial, and (3) fundamental error. *See id.; see also, e.g., State v. Wilson,* 109 N.M. 541, 787 P.2d 821 (1990); *State v. Isiah,* 109 N.M. 21, 781 P.2d 293 (1989); *State v. Clark,* 108 N.M. 288, 772 P.2d 322 (1989), *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989), *overruled on other grounds by State v. Henderson,* 109 N.M. 655, 789 P.2d 603 (1990); *State v. Taylor,* 104 N.M. 88, 717 P.2d 64 (Ct.App.1986); *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.1978); *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974).

■ Because we believe some confusion has arisen concerning the continued vitality and application of the plain error doctrine, we address defendant's request for plain error review first. Claims of plain error developed as a result of the adoption of New Mexico Rule of Evidence 11–103(D), which states, "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." SCRA 1986, 11–103(D); *see State v. Tucker,* 86 N.M. 553, 525 P.2d 913 (Ct.App.1974) (prior to adoption of rules of evidence, New Mexico law did not allow review of unpreserved plain error). We have previously defined "plain error" as " 'grave errors which seriously affect substantial rights of the accused,' 'errors that result in a clear miscarriage of justice,' [or] errors that 'are obvious or * * * otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.' " *State v. Marquez,* 87 N.M. 57, 61, 529 P.2d 283, 287 (Ct.App.1974) (quoting *United States v. Campbell,* 419 F.2d 1144, 1145 (5th Cir. 1969)); *see also State v. Summerall,* 105 N.M. 82, 82–83, 728 P.2d 833, 833–34 (1986). While we have applied a plain error analysis to prosecutorial misconduct in asking questions seeking to elicit evidence about defendant's postarrest silence in the past, *see State v. Lara,* we do not review the misconduct in this case under the doctrine of plain error because we are precluded from doing so by supreme court precedent.

First, the principle of plain error applies only to error in the presentation of evidence. Rule 11–103. Thus, while the prosecutor's questioning of defendant could be analyzed as plain error, the prosecutor's remarks in closing were not evidence and therefore are not subject to a plain error analysis. *See State v. Sanchez,* 86 N.M. 713, 526 P.2d 1306 (Ct.App.1974) (distinguishing argument from evidentiary matters and ruling that plain error is not applicable to closing argument because it is not an evidentiary matter).

Secondly, the supreme court has taken the position that plain error applies *only* to errors in evidentiary *rulings* of the trial court. *See Isiah,* 109 N.M. at 23, 781 P.2d

at 295 n. 1; *see also State v. Wall,* 94 N.M. 169, 171, 608 P.2d 145, 147 (1980). We are concerned with this interpretation of the plain error rule because we believe that the very point of the rule is to permit review of grave errors in the admission of evidence which have *not* been the subject of a ruling by the trial court because no objection was made at trial. Under *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973), however, we are bound to follow supreme court precedent, and thus we decline to apply the doctrine of plain error to the prosecutor's cross-examination of defendant in this case. *See State v. Isiah; State v. Wall.*

Instead, we analyze this case under the "substantial justice" branch of the fundamental error doctrine. "The doctrine of fundamental error, even though it applies 'only under exceptional circumstances,' does apply 'to prevent a miscarriage of justice.'" *State v. Osborne,* 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (quoting *Clark,* 108 N.M. at 297, 772 P.2d at 331). Application of the doctrine is appropriate in either of two instances: (1) when the defendant's innocence is indisputable or the question of guilt "'is so doubtful that it would shock the conscience to permit the conviction to stand,'" or (2) when "'substantial justice' has not been done." *Osborne,* 111 N.M. at 662, 808 P.2d at 632 (quoting *State v. Rogers,* 80 N.M. 230, 232, 453 P.2d 593, 595 (1969) and *State v. Buhr,* 82 N.M. 371, 372, 482 P.2d 74, 75 (Ct.App. 1971)). In this case, the first branch of the doctrine does not apply.

However, the second may apply. As noted above, some cases have analyzed claims of prosecutorial misconduct as a "fair trial" issue. *See State v. Wilson; State v. Taylor; State v. Vallejos.* In an effort to harmonize these cases, we first discuss the relationship between the concepts of "fair trial" and the "substantial justice" component of "fundamental error." While we recognize that the most recent trend in supreme court cases is to couch review of unobjected-to prosecutorial misconduct in terms of "fundamental error," *see, e.g.,*

*State v. Gonzales,* 112 N.M. 544, 817 P.2d 1186 (1991); *State v. Jett,* 111 N.M. 309, 805 P.2d 78 (1991); *State v. Isiah; State v. Clark,* we also observe that the court has not eradicated "fair trial" language from fundamental error review. *See State v. Jett.*

■ Indeed, the overlap in this area has previously been recognized by this court in cases acknowledging that the distinctions between the concepts of "due process," "fundamental error," and "fair trial" are hazy at best. *See Buhr,* 82 N.M. at 372, 482 P.2d at 75; *State v. Vallejos; see also State v. Diaz,* 100 N.M. 210, 215, 668 P.2d 326, 331 (Ct.App.1983) (citing *Vallejos* and noting similarity between concepts of "fair trial" and "fundamental error"). Most notably, in the context of prosecutorial misconduct, the concepts of substantial justice and fair trial have become intertwined in that a finding of fundamental error arising from prosecutorial misconduct inevitably leads to reversal, based on recognition of the fact that the right to a fair trial has been compromised. *See, e.g., State v. Ramirez; State v. Diaz.* Thus, we believe it is safe to say that at least in this context, i.e., when prosecutorial misconduct is so blatant and prejudicial as to compromise the fair administration of justice, the concepts of fair trial and substantial justice are identical.

■ Turning now to the merits of defendant's claim, we must first determine whether the language of the prosecutor's questions on cross-examination and his comments in closing were such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent. *See State v. Isiah; State v. Lopez.* In support of his argument that they were such comments, defendant cites *State v. Apostle,* 8 Conn. App. 216, 512 A.2d 947 (1986). The *Apostle* court held that similar cross-examination, in conjunction with a closing argument that emphasized the defendant's failure to correct his original statement, con-

stituted impermissible comment on the defendant's right to remain silent. The *Apostle* court reasoned that the cross-examination and closing argument implied that the defendant did not have a right to remain silent, but instead had an obligation to tell the police that his original statement was false. The *Apostle* court also held that the defendant did not forever waive his right to remain silent by giving a statement immediately following his arrest, because the defendant could stop speaking to the police at any time. *See also State v. Heller*, 58 Wash.App. 414, 793 P.2d 461 (1990) (extensive cross-examination of the defendant regarding her failure to correct her initial statements was impermissible comment on her exercise of the right to remain silent).

The state argues that because defendant gave a statement at the time of his arrest, there was no silence upon which to comment. This argument necessarily assumes that if an accused gives one statement following arrest, the accused forever waives the right to remain silent, or at least waives the right to be free from comment on silence. We decline to so hold, since we agree with the *Apostle* court that a defendant may exercise the right to remain silent even if that right is not initially asserted. *See also Martin*, 101 N.M. at 600, 686 P.2d at 942 (declining to limit protection of right to remain silent to custodial interrogation only, and extending it to cover postarrest, pretrial silence as well).

The state also argues that the prosecutor was merely "challenging" defendant's explanation for his prior inconsistent statements. As the state notes, the constitutional bar against the use of silence does not apply to cross-examination which inquires into prior inconsistent statements. *See Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980); *accord State v. Olguin*, 88 N.M. 511, 542 P.2d 1201 (Ct.App.1975) (questioning the defendant concerning prior inconsistent statements made at time of arrest was proper cross-examination). Our answer to this argument is that the conduct of the prosecutor in this case is distinguishable from the conduct of the prosecutors in *Anderson* and *Olguin*, which upheld the prosecutors' inquiries into the defendants' different explanations of conduct. In *Anderson* and *Olguin*, the prosecutors focused on the defendants' failure to tell the same version of events at interrogation and trial. The questioning in those cases targeted the inconsistencies between the defendants' statements in testimony and the defendants' statements to police. Thus, the prosecutors in *Anderson* and *Olguin* were allowed to inquire why, when a defendant chose to make a statement to police, he chose to tell them the version he did, rather than the version he asserted to be the truth at trial. This sort of cross-examination is patently different from that which focuses on a defendant's postarrest, pretrial silence in order to impeach his credibility with the implication that he is lying because he failed to return to the police and make another statement.

We agree with defendant that the prosecutor's questions in this case unmistakably focused on his postarrest, pretrial silence rather than the inconsistencies between his two explanations, and that the prosecutor's closing comment referring to that cross-examination was similarly focused and compounded the error. *See State v. Apostle; see also State v. Martin.* Indeed, the prosecutor's conduct in this case is not unlike that found to be objectionable in other New Mexico cases in which prosecutors used defendants' silence for impeachment purposes. *See Clark*, 108 N.M. at 303, 772 P.2d at 337; *Martin*, 101 N.M. at 599–600, 686 P.2d at 941–42; *Ramirez*, 98 N.M. at 269, 648 P.2d at 308; *Romero*, 94 N.M. at 300–302, 609 P.2d at 1256–1258.

*State v. Molina*, 101 N.M. 146, 679 P.2d 814 (1984), cited by the state, is not to the contrary. In *Molina*, the prosecutor's comments were invited, and there was some question as to whether the comments were unequivocally directed at the defendant's postarrest silence. *Id.* at 147, 679 P.2d at 815. Contrary to the state's assertion, the

prosecutor's remarks in this case, which focused on defendant's exercise of the right to remain silent, were not invited; nor is there any question that they unequivocally pertained to postarrest, pretrial silence. *Molina* is not controlling. *See also Wilson,* 109 N.M. at 546–47, 787 P.2d at 826–27 (prosecutor's use of testimony elicited by defense counsel rose to the level of misconduct in spite of the fact that defense counsel "opened the door").

■ Having determined that the prosecutor's comments violated defendant's privilege against self-incrimination, we must resolve whether the other evidence in this case was so overwhelming that any prejudicial or harmful effect of any inference the jury might have drawn from the comments is minimal. *Clark,* 108 N.M. at 303–04, 772 P.2d at 337–38; *see also State v. Isiah.* We have already determined that the evidence in this case was substantial enough to sustain defendant's conviction; however, overwhelming evidence and substantial evidence are not synonymous. *See State v. Hoxsie,* 101 N.M. 7, 10, 677 P.2d 620, 623 (1984), *overruled on other grounds by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989); *cf. Wilson,* 109 N.M. at 547, 787 P.2d at 827 (evidence which "arguably fell below the standard to which the State is held under its burden of proof beyond a reasonable doubt" was nevertheless adequate to sustain conviction on appeal).

In *Day,* we granted the defendant a new trial on the basis of prosecutorial misconduct, despite the fact that the evidence was substantial enough to support the conviction. We reasoned that because credibility was largely at issue and because the jury was required to resolve conflicting testimony, we were unable to say that the prosecutor's conduct did not play a part in resolving the conflicts in favor of guilt. *Day,* 91 N.M. at 573–74, 577 P.2d at 881–82. Similarly, the jury in this case was required to resolve conflicting testimony, and credibility was a pivotal issue. While there was evidence to support the jury's determination that defendant was guilty of trafficking, there was also evidence that defendant was only at Montoya's to purchase a small amount of cocaine for personal use, and that Montoya, originally targeted by the police, was the dealer. Under these circumstances, as in *Day,* we cannot say there is no reasonable probability that the prosecutor's numerous comments on silence were not a significant factor in the jury's deliberations in relation to the rest of the evidence before them, in light of the fact that the evidence against defendant was far from overwhelming. *See id.; cf. State v. Isiah; State v. Clark.* Therefore, defendant is entitled to a new trial. *See State v. Day; see also State v. Romero.*

Although we believe that a new trial is warranted under the circumstances of this case, we take this opportunity to caution prosecutors and defense counsel alike concerning the issue of comments on silence. In the past, we have urged prosecutors to abandon the use of such comments as a prosecutorial technique. *See id.,* 94 N.M. at 302, 609 P.2d at 1258. We reiterate that admonishment here and state that prosecutors who inject impermissible comments on silence into trials will risk reversal by this court of convictions secured through such tactics, regardless of whether there is objection. Indeed, the prophylactic effect of the rule that we resurrect is one of the main reasons for its resurrection. However, we also caution defense counsel. Given the recent development of case law in this area, there may be no strategic advantage to be gained from failing to object to such remarks. Counsel who fail to object to improper comments and seek curative instructions in other cases may risk waiver of the issue on appeal or affirmance of the conviction, despite error, due to the compelling nature of the evidence introduced against the defendant at trial. In this case, however, the evidence was not overwhelming. Therefore, the fact that the prosecutor intentionally elicited direct comment on the exercise of defendant's rights, despite our repeated admonitions not to do so, amounted to fundamental error under the fair trial branch of that doctrine.

Based on the foregoing, defendant's conviction is reversed, and this cause is remanded to the district court for a new trial.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.