863 P.2d 1071

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Bernie A. LUCERO, Defendant–
Appellant.**

**No. 21054.**

Supreme Court of New Mexico.

Oct. 28, 1993.

ion testimony regarding post traumatic stress disorder (PTSD) pertaining to victims of sexual abuse. We accepted certification of this case from the Court of Appeals to review the defendant's appeal in light of our recent opinion in *State v. Alberico*, 116 N.M. 151, 861 P.2d 192 (1993). In this opinion, we have the opportunity to expound on the limitations of the admissibility of PTSD testimony that we outlined in *Alberico*. The defendant complains of other errors, but there is no need to address them because we reverse on the issue of the admission of improper expert testimony and remand for further proceedings consistent with this opinion.

## FACTS

Bernie Lucero was convicted of five counts of criminal sexual contact of a minor. The alleged victim was his niece who was less than twelve years old at the time of the alleged abuse.

At trial, the State introduced the testimony of a clinical psychologist, Dr. Barbara Lenssen. Dr. Lenssen stated that she evaluated the complainant at the request of the district attorney's office to determine her competency. Lenssen's qualifications were not challenged.

Dr. Lenssen testified at trial that she first met with the complainant's parents and then interviewed the complainant twice, spending a total of about four hours with her. She also met with the complainant's therapist and viewed a videotaped interview of the complainant by an investigator from the district attorney's office. Dr. Lenssen testified that she diagnosed the complainant as suffering from post traumatic stress syndrome (PTSS).[1] She noted that the symptoms which she observed in the complainant fit very accurately into what the manual requires for a diagnosis of PTSS.[2] Dr. Lenssen stated

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for appellee.

Sena & Couleur, P.C., Douglas Couleur, Santa Fe, for appellant.

## OPINION

FROST, Justice.

In this opinion, we again address the subject of the admissibility of expert opin-

---

**1.** PTSS is virtually identical with post traumatic stress disorder (PTSD), which we discussed in *Alberico*.

**2.** Although she did not name it, we assume that the manual to which Dr. Lenssen referred was the *Diagnostic & Statistical Manual of Mental Disorders* (3d rev. ed. 1987) ("DSM III–R"),

that many of the complainant's symptoms were consistent with those in children who have been sexually abused. She also testified that the cause of the complainant's PTSS was the sexual molestation that she had been undergoing.

During her testimony at trial, Dr. Lenssen recounted several statements regarding sex abuse that the complainant had made to her during her evaluation to the effect that her uncle had "done it to her." For example, Dr. Lenssen testified that the complainant told her that the defendant "put his thing on my vagina ... almost every day." Dr. Lenssen also repeated the complainant's answer to a fill-in-the-blank question. During one interview, she asked the complainant to complete this sentence: "What really bothers me is _____;" Dr. Lenssen testified that her response was, "What my uncle did to me."

Dr. Lenssen also commented directly on the complainant's credibility. For example, she testified that the complainant "was consistent in saying that it was her uncle" and was consistent in referring to the rooms in which she was subjected to sexual abuse. Dr. Lenssen also commented on the complainant's demeanor, which she said changed when talking about the sex abuse that she endured. She stated that if the complainant were not telling the truth, she probably would have reacted differently than she did.

Trial counsel did not object to Dr. Lenssen's testimony except on hearsay grounds as to some of the complainant's statements that she repeated. Counsel did file a motion in limine, however, objecting specifically to Dr. Lenssen's testimony that the complainant had told her that she had been penetrated by Lucero. The trial judge apparently was concerned about whether Lenssen was reporting what the complainant had said, which might have been admissible as a hearsay exception, or whether she had drawn that conclusion based upon her evaluation, which troubled the trial judge. In any event, Lucero's appellate counsel concedes that his trial counsel did

which the American Psychiatric Association

not pursue this objection, nor did he seek a definitive ruling on the motion in limine.

## ISSUES

Lucero raises several issues on appeal. In addition to contesting the admission of Dr. Lenssen's testimony regarding PTSS, Lucero raises the issues of ineffective assistance of counsel, prosecutorial misconduct, newly discovered evidence warranting a new trial, the admission of improper impeachment evidence, and prejudice as a result of amending the indictment during the trial to conform with the evidence. In light of our reversal on the issue of the improper expert testimony, it is unnecessary to address these other errors about which Lucero complains.

## DISCUSSION

Lucero argues that although his trial counsel failed to make a precise objection to Dr. Lenssen's expert testimony, the trial judge was alerted to the issue of the validity of PTSS testimony and erred in admitting it. The State argues that this issue was not preserved and should not be addressed on appeal. Lucero counters that even if the error was not preserved by a proper objection below, the admission of Lenssen's testimony constitutes fundamental or plain error.

### Preservation of Error

■ The precise nature of the defense's objection at trial to Dr. Lenssen's testimony is unclear to us, but we can infer from the record that the objection was aimed at Lenssen's repetition of the complainant's statement that Lucero had penetrated her. The basis for this objection was that the crime charged was sexual contact, not rape. Thus, the defense's objection was based on relevancy grounds. The trial judge was not worried about relevancy because penetration would have been probative of sexual contact. The judge was concerned about whether Dr. Lenssen was "leaping from certain things to certain conclusions" or whether she was merely re-

published.

peating a statement that the complainant made during the psychological evaluation, which might have been admissible under SCRA 1986, 11–803(D).

■ While the unclear record may be the result of imprecision by the trial judge, it is the responsibility of counsel at trial to elicit a definitive ruling on an objection from the court. It is also trial counsel's duty to state the objections so that the trial court may rule intelligently on them and so that an appellate court does not have to guess at what was and what was not an issue at trial. *See State v. Casteneda*, 97 N.M. 670, 674, 642 P.2d 1129, 1133 (Ct.App.1982). We conclude that trial counsel did not lodge an objection about the validity of Dr. Lenssen's testimony regarding her PTSS diagnosis. He only objected to a specific portion of her testimony. Thus, the issue concerning the validity of her testimony and diagnosis was not preserved for appeal. We will, however, review the admission of her testimony as plain error.

### Fundamental and Plain Error

"Even if the defendant did not raise proper objections at trial, he may be entitled to relief if the errors of which he complains on appeal constituted plain error, Rule 11–103(D), or fundamental error, SCRA 1986, 12–216(B)(2). In either case, we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct.App.), *cert. denied*, 109 N.M. 704, 789 P.2d 1271 (1990). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). "The doctrine of fundamental error is to be applied only under exceptional circumstances and solely to prevent a miscarriage of justice." *State v. Clark*, 108 N.M. 288, 297, 772 P.2d 322, 331, *cert. denied*, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989). "The doctrine

of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970).

■ The predicate for review on the basis of plain error is less stringent than for fundamental error. Unlike the situation in the case of fundamental error, to find plain error we need not determine that there has been a miscarriage of justice or a conviction in which the defendant's guilt is so doubtful that it would shock the conscience of the court to allow it to stand. Plain error, however, applies only to evidentiary matters. To establish plain error, the error complained of must have affected "substantial rights although [the plain errors] were not brought to the attention of the judge." SCRA 1986, 11–103(D). In *State v. Hennessy*, 114 N.M. 283, 837 P.2d 1366 (Ct.App.), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992), the Court of Appeals recently commented that

> the supreme court has taken the position that plain error applies *only* to errors in evidentiary *rulings* of the trial court. *See [State v.] Isiah*, 109 N.M. [21] at 23, 781 P.2d [293] at 295 n. 1 [ (1989) ], *see also State v. Wall*, 94 N.M. 169, 171, 608 P.2d 145, 147 (1980). We are concerned with this interpretation of the plain error rule because we believe that the very point of the rule is to permit review of grave errors in the admission of evidence which have *not* been the subject of a ruling by the trial court because no objection was made at trial.

*Id.*, 114 N.M. at 286–87, 837 P.2d at 1369–70 (emphasis in original). The Court in *Hennessy* was correct in its analysis of the purpose of the plain error doctrine in Rule 103(D), but its interpretation of this Court's "position that plain error applies *only* to errors in evidentiary *rulings*" is too restrictive. Perhaps our use of the term "evidentiary rulings" instead of "evidentiary matters," however, was imprecise. *See State v. Isiah*, 109 N.M. 21, 23 n. 1, 781 P.2d 293, 295 n. 1 (1989). To the extent

that we have stated or intimated that the plain error rule "applies only to errors in evidentiary *rulings,*" as opposed to evidentiary matters in general, we expressly overrule that holding and disabuse the bar of that interpretation. We conclude that the admission of Dr. Lenssen's testimony constituted plain error.

### Admission of PTSD Testimony

■ Unlike the expert testimony before the Court of Appeals in *Barraza,* we conclude that the admission of Dr. Lenssen's testimony in this case constituted plain error. The *Barraza* court held that an expert's testimony regarding rape trauma syndrome was relevant to establish an element of the crime charged. *Barraza,* 110 N.M. at 48, 791 P.2d at 802. The Court also noted that the expert did not testify that the complainant had in fact been raped, but rather referred to the incident only as the "alleged rape." *Id.* at 49, 791 P.2d at 803. Thus, the Court of Appeals in *Barraza* held that the expert's testimony did "not suggest that the danger of unfair prejudice so outweighed the probative value ... as to require reversal in the absence of an objection." *Id.* at 50, 791 P.2d at 804.

Unlike the expert's testimony in *Barraza,* Dr. Lenssen's testimony here was extremely prejudicial and went beyond the permissible boundaries of PTSD testimony that we recently outlined in *Alberico.* First, it was improper for her to comment directly upon the credibility of the complainant. As we stated in *Alberico,* "While PTSD testimony may be offered to show that the victim suffers from symptoms that are consistent with sexual abuse, it may not be offered to establish that the alleged victim is telling the truth; that is for the jury to decide." *Alberico,* 116 N.M. at 169, 861 P.2d at 210.

Second, naming the perpetrator was tantamount to saying that the complainant was telling the truth. In *Alberico,* we also held that "the expert may not testify as to the identity of the alleged perpetrator of the crime" because "such testimony encroaches too far upon the jury's function as arbiter of the witnesses' credibility." *Id.*

at 170, 861 P.2d at 211. Psychologists do not pretend to be able to evaluate a person's truthfulness and "allowing the psychologist to testify as to the identity of the accused serves only to repeat what the complainant told the examining expert and thus bolster her credibility." *Id.* at 170, 861 P.2d at 211.

Third, "the expert may not testify that the victim's PTSD symptoms were in fact caused by sexual abuse. This again vouches too much for the credibility of the victim and encroaches too far upon the province of the jury to determine the truthfulness of the witnesses." *Id.* at 171, 861 P.2d at 212. Dr. Lenssen testified that a properly qualified mental health expert can determine that the presence of certain symptoms or behaviors in alleged victims, as catalogued in DSM III–R, is consistent with sexual abuse. In *Alberico,* we held that such testimony was permissible. Dr. Lenssen went too far, however, when she testified that the cause of the complainant's PTSS symptoms was in fact sexual molestation. We held in *Alberico* that expert testimony to that effect was not admissible because we did not believe that such testimony was scientifically valid under SCRA 1986, 11–702. *Id.* at 171, 861 P.2d at 212.

■ One of the concerns about the admission of PTSD testimony that we addressed in *Alberico* was that in making a diagnosis, the examining expert must in large part rely on what the alleged victim reports. The psychologist has no scientifically valid or reliable means by which to determine whether a particular event has in fact happened. To make that conclusion, the expert must have believed what the alleged victim reported because, as psychologists will admit, they have no "truth-telling machine." Thus, to allow an expert to testify that the complainant's symptoms were in fact caused by sex abuse is tantamount to allowing the expert to indirectly validate the complainant's credibility, and that is improper. Determining the complainant's credibility or truthfulness is not a function for an expert in a trial setting, but rather is an issue reserved for the jury. *See State v. Lopez,* 84 N.M. 805, 810, 508

P.2d 1292, 1297 (1973) ("ultimate determination as to the credibility of witnesses and their testimony lies with the trier of facts").

■ Where the State went wrong in this case was in the purpose for which it offered Dr. Lenssen's testimony. It is proper, under *Alberico,* to offer the testimony of a qualified psychologist to show that the complainant's symptoms are consistent with symptoms that have been observed in known victims of sexual abuse because such expert opinion is probative of whether a crime has been committed. The expert may testify about the complainant's symptoms that have been observed and may offer a diagnosis utilizing DSM III–R. Even though possibly admissible under Rule 803(D), allowing the expert during direct examination to repeat to the jury the complainant's statements, made to the expert during her evaluation, is too prejudicial because it amounts to an indirect comment on the alleged victim's credibility. Furthermore, repeating what the complainant tells the expert may not be necessary in explaining the basis of her opinion that the complainant suffers from PTSD or PTSS consistent with sex abuse. In any event, the State makes no argument here that such testimony was reasonably pertinent to the complainant's diagnosis or treatment. *See* SCRA 1986, 11–803(D) ("Statements made for purposes of medical diagnosis or treatment [are admissible] ... insofar as reasonably pertinent to diagnosis or treatment."). The prejudicial effect of recounting the complainant's statements in this case, therefore, outweighed any probative value that they might have had. SCRA 1986, 11–403. Nothing in this opinion or in *Alberico,* however, would prevent the defense from eliciting such testimony on cross-examination if defense counsel believes it is wise to do so.

## CONCLUSION

■ This case does not really involve the scientific validity of PTSD testimony because the psychologist's testimony here hardly resembled the testimony that we found admissible in *Alberico.* Here, unlike in *Alberico,* the prosecution stated that the purpose for offering PTSD testimony was not to present evidence that was probative of sexual abuse, but rather to explain the post incident behavior of children. For the testimony to be admissible for that purpose, however, the defense must have made the complainant's post incident behavior an issue, and the defense did not do so here. *See Alberico,* 116 N.M. at 171, 861 P.2d at 212.[3]

Dr. Lenssen testified that she was retained by the district attorney's office to evaluate the alleged victim's credibility and competency. It is obvious to us that the State's real purpose for introducing Dr. Lenssen's testimony was to bolster the complainant's credibility, as her testimony concerning the alleged victim's symptoms and her psychological disorder as described in DSM III–R was offered almost as an afterthought. Her testimony in this case really amounted to a repetition of the complainant's statements regarding sexual abuse made to her during her evaluation. In so many words, Dr. Lenssen testified that the complainant had in fact been molested. She went a step further and stated that it was the defendant who abused the complainant. She also commented that the complainant's statements were truthful. The fact that trial counsel did not preserve

---

**3.** Nothing in this opinion should be read as preventing a trial court from admitting PTSD evidence at the request of the State to disabuse the jury of commonly held but mistaken beliefs about an alleged rape victim's post incident behavior when the defense has made such behavior an issue. *See State v. Newman,* 109 N.M. 263, 266, 784 P.2d 1006, 1009 (Ct.App.) (allowing introduction of PTSD evidence to assist jury in understanding behavior of sexually abused children when defense alleged that behavior of complainant was inconsistent with abuse), *cert.* denied, 109 N.M. 262, 784 P.2d 1005 (1989). In addition, this opinion would not prevent the admission of the complainant's statements through another witness under SCRA 1986, 11–801(D)(1)(b) to rebut the defendant's contention that the complainant is fabricating her accusations. *See State v. Altgilbers,* 109 N.M. 453, 457, 786 P.2d 680, 684 (Ct.App.1989) (allowing admission of prior consistent statements by complainants when defendant claimed fabrication and improper influence), *cert. denied,* 109 N.M. 419, 785 P.2d 1038 (1990).

these errors for appeal by lodging a proper objection does not avoid review of the issue as plain error.

■ The only witnesses to the alleged abuse were the defendant and the complainant. Because credibility was a pivotal issue in this case, it is likely that the jury was swayed by Dr. Lenssen's improper testimony. The admission of the expert testimony as to the complainant's credibility in this case was not harmless error. *See Sanchez v. State*, 103 N.M. 25, 27, 702 P.2d 345, 347 (1985) (holding that restriction of defense's cross-examination of expert was reversible error because only other witnesses testifying as to rape were complainant and defendant). Because Dr. Lenssen repeated so many of the complainant's statements regarding the alleged sexual abuse by the defendant and because she commented directly and indirectly upon the complainant's truthfulness, we have grave doubts concerning the validity of the verdict and the fairness of the trial. Lucero's conviction, therefore, is reversed, and this case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

RANSOM, C.J., and MONTGOMERY, J., concur.