This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                                              **NO. 28,610**

**JESUS AVILES DOMINGUEZ**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Timothy L. Garcia, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Jesus Aviles Dominguez (Defendant) appeals his convictions for second-degree murder, conspiracy, and intimidation of witnesses. The charges arose from events at the Santa Fe County Detention Center on June 4, 2004, that resulted in the death of Dickie Ortega, an inmate, who was fatally beaten following allegations that he had made false accusations against another inmate. We affirm Defendant's convictions.

Defendant raises five issues. For convenience, we address them in the following order: (1) the prosecutor's comment during closing arguments, suggesting that Defendant had waited three-and-a-half years to fabricate his story after obtaining the statements of other participants, was an improper comment on his post-*Miranda* silence; (2) the district court erred in admitting testimony by another inmate that Defendant had tried to shake him down for his personal belongings the day before the incident; (3) the district court erred in refusing Defendant's tendered instruction defining reasonable doubt; (4) the district court erred in instructing the jury on an aiding and abetting theory; and (5) the prosecutor unfairly impeached the testimony of a witness who testified on Defendant's behalf.

# I.    DISCUSSION

## A.    The Prosecutor's Comment on Defendant's Delayed Statement

At trial on November 14, 2007, approximately three-and-a-half years after the incident, Defendant testified in his own defense. He claimed that the final beating was carried out by two other inmates, and he had tried to stop it at one point because the accusation that Ortega was a "rat" was not supported by "paperwork," such as reports or other documents obtained through discovery, indicating Ortega had informed on someone else. Defendant acknowledged during cross-examination that shortly after the incident he had told Detective James Yeager a different version of events that Ortega and Brad Ortega, another inmate, "beat the shit out of each other," implying that nobody else had anything to do with it.

During closing arguments, the prosecutor made the following statements:

> The second man who testified is -- of the four is Joe Corriz. Joe Corriz is here (indicating), is here, and he was clearly the one who stood at the door and saw practically everything that went on. Joe Corriz'[s] reasons for testifying are very different. Joe Corriz -- and I think you can see this when he testified on the stand, that he is tortured by his role and tortured by what he saw. And he knows what his role was. But he gave a statement, as did all of the four early on. All of them gave a statement that night, the next morning or within those days immediately following this offense. They gave a statement not three-and-a-half years later after they've gotten all of the discovery and gone through everything and known what everybody else --

3

Defendant's attorney objected at this point and moved for a mistrial on the basis that the prosecutor's statements violated Defendant's constitutional right to remain silent. Earlier at trial, Defendant had agreed with the prosecutor's question on cross-examination: "You've had discovery in this case [for] over three years, haven't you?" "Because the facts are undisputed, we review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence." *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852.

There are three sources of the general rule that a prosecutor may not comment on a defendant's silence: "(1) the constitutional privilege against self-incrimination, (2) constitutional due process, and (3) the rules of evidence barring irrelevant evidence, Rule 11-402 NMRA . . . and evidence whose probative value is substantially outweighed by the danger of unfair prejudice, Rule 11-403 NMRA." *Foster*, 1998-NMCA-163, ¶ 9. To determine whether a prosecutor has improperly commented on a defendant's silence, such that a new trial is warranted, we apply a two-step process:

> First, we must determine whether the language of the prosecutor's questions on cross-examination and his comments in closing were such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent. If the prosecutor's questions or statements constituted improper commentary on [the d]fendant's silence, we must then determine whether there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them.

*State v. Pacheco*, 2007-NMCA-140, ¶ 12, 142 N.M. 773, 170 P.3d 1011 (internal quotation marks and citations omitted). "[W]e review prosecutorial comment on silence to determine whether the error is harmless beyond a reasonable doubt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156.

New Mexico cases have addressed circumstances, such as the present ones, where a defendant offers one version of the facts around the time of the alleged offense and another version at trial. Where a defendant waives his right to remain silent both during interrogation and at trial, it is not improper for the prosecutor to ask questions about the story previously told to police. *State v. Loera*, 1996-NMSC-074, ¶ 8, 122 N.M. 641, 930 P.2d 176. In these cases, the "silence" refers to the defendant's failure after making the first statement to go back and correct it in a timely manner, so that it accords with his sworn testimony at trial.

In *State v. Hennessy*, 114 N.M. 283, 837 P.2d 1366 (Ct. App. 1992), *overruled in part on other grounds by State v. Lucero*, 116 N.M. 450, 863 P.2d 1071 (1993), the defendant was charged with trafficking cocaine. At the time of arrest, he told officers that he was at the location in question just to borrow some tools. At trial, he testified that he had been there to buy cocaine for personal consumption. On cross-examination, the prosecutor questioned the defendant extensively concerning his failure to go back to the police in the nine-month period between arrest and trial and

tell them that he had lied. *Hennessy*, 114 N.M. at 285, 837 P.2d at 1368. The prosecutor also stated during closing argument that the defendant "never bothered to tell the police the truth." *Id.* (internal quotation marks omitted). Reversing the defendant's conviction, this Court rejected the state's argument that there was no "silence" to comment on as the defendant had in fact given a statement to police. *Id.* at 288, 837 P.2d at 1371. We reasoned that this argument would require an assumption that a defendant who gives an initial statement waives his right to remain silent forever after. *Id.* We also noted that the prosecutor's questioning did not focus on the inconsistency between the first statement and the current testimony. Rather, it focused on the defendant's silence. *Id.* ¶¶ 19-20.

In *Pacheco*, the defendant was charged with criminal sexual penetration of a minor. He initially made statements to the police suggesting that his father was not present in the home at the time of the alleged offense. 2007-NMCA-040, ¶ 2. At trial, the defendant and his father both testified that the father had been home at the relevant time. *Id.* ¶¶ 3-4. The father testified that he was in the next room with the door open, and he had not seen or heard anything suspicious. *Id.* ¶ 3. At trial, the prosecutor questioned the defendant as to whether he had called the investigator back upon realizing that his father had been present. *Id.* ¶ 5. In his closing statement, the prosecutor suggested that it defied common sense for the defendant to fail to inform

the investigator that he now realized his father had in fact been home. *Id.* ¶ 7. Reversing the defendant's convictions, we again rejected the state's assertion that the focus of the questioning was on the inconsistency between the initial statement and the later testimony and concluded that the prosecutor's focus was on the defendant's silence. *Id.* ¶¶ 19-20.

In *Pacheco*, we also addressed the state's argument that the prosecutor's questions and comments should be regarded as permissible support for a theory of recent fabrication. We stated that "[a]lthough prosecutors may unquestionably endeavor to undermine alibis and other forms of exculpatory testimony by suggesting recent fabrication, they must be circumspect about their approach. A claim of recent fabrication does not give the [s]tate carte blanche to engage in otherwise impermissible commentary on a defendant's silence." *Id.* ¶ 17.

We believe that several factors distinguish the present case from *Pacheco* and *Hennessy*, such that the jury would not "naturally and necessarily have taken them to be comments on the exercise of the right to remain silent." *Pacheco*, 2007-NMCA-140, ¶ 12 (internal quotation marks and citation omitted). First, as the trial judge noted upon defense counsel's objection, the prosecutor's bare comment that the other witnesses had not waited three-and-a-half years to make their statements was factually correct. Taken literally, the comment was about the other witnesses, not about

7

Defendant. The comment could be understood as an argument pointing out the greater likelihood of reliability of statements made near the time of an event when it is fresh in the witness's memory as opposed to statements first made years after the event. In the context of what the jury had heard from other witnesses, the comment also may have suggested that Corriz felt such remorse that he made a statement right away, even though he thereby risked the consequences of being labeled a "rat."

Further, we believe the focus was on recent fabrication, and that the prosecutor was adequately circumspect in her approach. Her point appears to have been that Defendant gathered information for three-and-a-half years and was thus able to advantageously fabricate his own version of events. The prosecutor did not suggest to the jury that Defendant had a duty to proactively speak to the authorities, and that he voluntarily would have done so if he was innocent.

We also make two observations about the likely harmless effect on the jury of the prosecutor's reference to waiting three-and-a-half years. First, the discrepancy between Defendant's initial statement to Detective Yeager and his trial testimony provides no apparent advantage to him. The first statement blamed the beatings on the two original participants, including Ortega himself. The second statement blamed the incident on Daniel Good and Corriz. Thus, in both versions, Defendant asserted that he had nothing to do with it. Second, Defendant may have had a motive for being

less than truthful shortly after the incident. Given the dangers of informing on others while incarcerated, it is plausible that Defendant, a short time after the incident, would have hesitated to implicate persons other than the two who were beaten.

Because the prosecutor's statement in her closing argument was not naturally and necessarily a comment on Defendant's silence and because the focus was largely on the likelihood of Defendant's recent fabrication of his testimony, we conclude that the district court did not err in denying a mistrial.

**B.      Admission of Testimony on an Attempted Shake-Down**

At Defendant's trial, Corriz testified that, on June 3, 2004, the day before the beating incident, he had been placed in the same pod as Defendant at the detention center. Jail personnel had given him some personal items, including clothing, towels, socks, toothbrush, and soap. Corriz testified that some men came into his assigned cell after he had carried the personal items there. Defense counsel objected, citing relevance. At a bench conference, defense counsel noted that the incident, as to which Corriz was about to testify, took place the day before the beating incident, and counsel believed the incident, concerning the men entering his cell, was not relevant to what occurred the next day. The district court overruled the objection. Corriz testified that the men were led by Defendant and Good. The following exchange then took place:

> [PROSECUTOR]: And what happened when [Defendant and Good] came into your room?

[CORRIZ]: As they entered, they started asking questions as far as who I was, what I was arrested for, who I knew, and why I had so much clothing.

[PROSECUTOR]: And are any of your items taken?

[CORRIZ]: They're attempted to be taken. I make a stand and, for the most part, deter the gentlemen from trying to seize what items I have.

[PROSECUTOR]: And that evening, is your door left to your room -- left opened or closed?

[CORRIZ]: That evening, once they exit and a short time period afterwards, because I was uncomfortable and the way I was approached and basically overwhelmed with people entering that cell, I closed the door to my cell and lock[ed] myself in.

Defendant argues that admission of this testimony violated Rule 11-402, which provides that evidence that is not relevant is not admissible. Rule 11-401 NMRA defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendant also argues that admission of this testimony violated Rule 11-404(B) NMRA, which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Further, Defendant argues that this testimony violated Rule 11-403, which provides that relevant evidence "may

10

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time[,] or needless presentation of cumulative evidence."

"In general, we review a trial court's admission or exclusion of evidence for abuse of discretion." *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *Id.*

The State argues that defense counsel's objection at trial did not preserve any argument based on Rules 11-403 and 11-404, as he had objected on the basis of relevancy under Rule 11-402. We agree that only the relevance objection was preserved. The State argues that their theory of the case was that Defendant's involvement in the three beatings included not only directly striking Ortega, but also encouraging or causing others in the pod to participate. This theory required the State to show that Defendant, within the power hierarchy of the pod, had sufficient sway over other inmates that they followed his directives to beat Ortega and to refrain from getting medical assistance for him. Testimony that Defendant had led the group of men who tried to take some of Corriz's possessions the day before the beating tends to make it more probable that Defendant had the power to lead events the following day than it would be without the testimony. The testimony was therefore relevant, as

that term is defined by Rule 11-401, and it was within the district court's discretion to admit it.

**C.      Reasonable Doubt Instruction**

At trial, Defendant tendered three alternative jury instructions related to reasonable doubt.

Instruction No. 5 states:

When a defendant's liberty is at stake, you must be certain in your own mind that the State has proved its case beyond a reasonable doubt. Proof beyond a reasonable doubt is equivalent to proof to a moral certainty.   Beyond a reasonable doubt means the highest level of confidence with which a historical or physical fact can be known.  As the judge of the facts, you must have the highest degree of confidence in the evidence before you may enter a finding of guilt.  If you do not believe that the State has proven every element of a crime charged to a moral certainty, you must acquit the [d]efendant of that charge.

Instruction No. 6 states:

Proof beyond a reasonable doubt is equivalent to proof to a moral certainty, and refers to the highest degree [of] confidence with which a historical or physical fact can be known.

The requirement of proof beyond a reasonable doubt is a prime instrument for reducing the risk of convictions resting on factual error.

There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account, however, where one party has his or her liberty at stake[,] this margin of error is reduced as to him/her by the process of placing on the other party the burden of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.   Due [p]rocess commands that no person shall lose his/her liberty unless the [g]overnment has borne the

burden of convincing the factfinder beyond a reasonable doubt. To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of being as error free as possible.

Instruction No. 7 states:

When a defendant's liberty is at stake, you must be certain in your own mind that the State has proved its case beyond a reasonable doubt. Proof beyond a reasonable doubt is equivalent to proof to a moral certainty. As the judge of the facts, you must have the highest degree of confidence in the evidence before you may enter a finding of guilt. If you do not believe that the State has proven every element of a crime charged to a moral certainty, you must acquit the [d]efendant of that charge.

Instead of Defendant's tendered instructions, the district court gave the jury UJI 14-5060 NMRA, which states:

The law presumes the defendant to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.

The burden is always on the state to prove guilt beyond a reasonable doubt. It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense[;] the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

While as a general matter "the Court of Appeals is *not* precluded from considering error in jury instructions," we are "precluded . . . from overruling those instructions that have been considered by [the New Mexico Supreme] Court in actual cases and controversies that are controlling precedent." *State v. Wilson*, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994). The Supreme Court has specifically

considered UJI 14-5060 and held that it "adequately expresses [the] definition [of reasonable doubt] and is to be used in all jury trials, unadorned by any added, illustrative language from this or any other opinion." *State v. Garcia*, 2005-NMSC-017, ¶ 10, 138 N.M. 1, 116 P.3d 72; *see Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) (holding that the Court of Appeals is bound by the precedents of the Supreme Court). Accordingly, we conclude that the district court did not err in refusing Defendant's tendered instructions and giving UJI 14-5060 as the definition of reasonable doubt.

**D.      Aiding and Abetting Instruction**

Defendant argues that the district court erred in giving the Uniform Jury Instruction on accessory liability.

UJI 14-2822 NMRA states:

> The defendant may be found guilty of a crime even though he himself did not do the acts constituting the crime, if the state proves to your satisfaction beyond a reasonable doubt that:
>
> 1.      The defendant intended that the crime be committed;
> 2.      The crime was committed;
> 3.      The defendant helped, encouraged or caused the crime to be committed.

The Committee Commentary to UJI 14-2822 refers to NMSA 1978, Section 30-1-13 (1972), and the use note states, in pertinent part: "For use if the evidence supports

liability of the defendant as an aider or abettor or co-conspirator regardless of whether conspiracy is charged."

Section 30-1-13 states:

> A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code.

Defendant argues that there is a difference between the statute's use of "procures, counsels, aids or abets" and the instruction's use of "helped, encouraged or caused," and that the latter language sets a lower standard than the former.

"The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error." *State v. Caldwell*, 2008-NMCA-049, ¶ 22, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citation omitted). Defense counsel's objection preserved the asserted error.

As discussed above, this Court "is *not* precluded from considering error in jury instructions," but we may not overrule "those instructions that have been considered by [the Supreme] Court in actual cases and controversies that are controlling precedent." *Wilson*, 116 N.M. at 795, 867 P.2d at 1177. The Supreme Court has addressed UJI 14-2822, although it has not considered the precise point Defendant

15

argues—that the instruction's use of language somewhat different from Section 30-1-13 allows for the possibility that the jury could convict a defendant using a lower standard than set by statute.

In the context of aiding and abetting, the Supreme Court has explained the concept in terms that demonstrate an overlap in the meanings of "procuring, counseling, aiding and abetting" and "helping, encouraging or causing."

> The evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval.

*State v. Salazar*, 78 N.M. 329, 331, 431 P.2d 62, 64 (1967) (internal quotation marks and citation omitted). By inference, the Court also indicated that verbal encouragement may suffice. "Mere presence, of course, and even mental approbation, if unaccompanied by outward manifestation or expression of such approval, is insufficient." *Id.* (internal quotation marks and citations omitted).

Dictionary definitions also reveal overlap in the meanings of "procuring, counseling, aiding and abetting" and "helping, encouraging or causing." Webster's Dictionary includes the following among the definitions of "abet": "to incite, encourage, instigate, or countenance [and] to assist or support in the achievement of a purpose." *Webster's Third New International Dictionary* 3 (3d ed. 1971). It

16

includes the following among the definitions of "encourage": "to give help or patronage to." *Webster's Third New International Dictionary*, *supra*, at 747.

We conclude that the use of different language in UJI 14-2822 and Section 30-1-13 is not so likely to mislead the jury that it constitutes reversible error.

**E.     Impeachment of Defense Witness**

Defendant argues that the district court erred in allowing the State to impeach Joseph Anaya, a defense witness. The substance of Anaya's testimony on direct examination was that he had been incarcerated at the same time in an adjacent pod to Defendant and conversed with him through a door separating the pods. Anaya testified that, in the course of this conversation, Defendant told him that Ortega was being beaten for being a rat, even though there was no paperwork proving that he was, and Defendant was going to stop the beating because it was going too far. On cross-examination, Anaya acknowledged that he had been tried for a previous incident, and Defendant had testified on his behalf. Defendant contends that the State's questions, as to whether he had previously testified on behalf of Anaya, improperly implied that his testimony was biased.

Defense counsel did not object to the State's cross-examination of Anaya regarding Defendant's previous testimony on his behalf. "Rule 12-216(A) NMRA . . . provides that for a question to be preserved for review by an appellate court, it

17

must appear that a ruling or decision by the district court was fairly invoked." *State v. Begay*, 1998-NMSC-029, ¶ 20, 125 N.M. 541, 964 P.2d 102 (internal quotation marks and citation omitted). Defendant asserts that this Court may review this issue as a matter of fundamental error, even though no objection was made or ruling invoked at trial. "Fundamental error exists when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Mascarenas*, 2000-NMSC-017, ¶ 7, 129 N.M. 230, 4 P.3d 1221 (internal quotation marks and citation omitted). Defendant does not articulate any reason this Court should apply the doctrine of fundamental error to the district court's admission of Anaya's testimony. Accordingly, we find no error.

**II.    CONCLUSION**

For the reasons set forth above, Defendant's convictions are affirmed.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**LINDA M. VANZI, Judge**