Argued and submitted August 24, ballot measure explanatory statement certified
September 8, 2000

Steven NOVICK,
*Petitioner,*

*v.*

Bill BRADBURY,
Secretary of State of Oregon;
Joe W. Foxall, Don McIntire, James Scherzinger,
Lynn-Marie Crider, and Dave Moss,
Explanatory Statement Committee Members,
*Respondents.*

(SC S47796)

10 P3d 254

Steven Novick, Portland, *pro se*, argued the cause and filed the petition.

Lynn-Marie Crider, Portland, *pro se*, waived appearance for respondents.

GILLETTE, J.

**GILLETTE, J.**

In this original proceeding, petitioner challenges the explanatory statement for Ballot Measure 8 (2000). *See* ORS 251.205 (providing for creation and manner of selection of committee of five citizens to prepare explanatory statement for initiated and referred measures); ORS 251.215 (providing for preparation and filing of explanatory statement by committee). The initiative measure would amend Article IX of the Oregon Constitution by adding a requirement that, unless a specified exemption applies, appropriations for state government expenditures shall not exceed 15 percent of the state's personal income.[1]

■      After the explanatory statement committee prepared and filed the explanatory statement at issue, the Secretary of State held a hearing to receive comments on the statement. Petitioner offered suggestions for changes to the explanatory statement at that hearing. Petitioner therefore is entitled to seek a different explanatory statement in this court. ORS 251.235; *see also Homuth v. Keisling (S39531)*, 314 Or 214, 218, 837 P2d 532 (1992) (ORS 251.235 authorizes Supreme Court review of explanatory statement when any suggestions were offered at Secretary of State's hearing).

■■      The committee is directed by statute to prepare an explanatory statement that is an "impartial, simple and understandable statement explaining the measure." ORS 251.215(1). This court's task is to determine whether the explanatory statement contains a sufficient and clear statement explaining the measure. *See Sizemore v. Myers*, 327 Or 456, 459, 964 P2d 255 (1998) (so stating); ORS 251.235 (authorizing court to consider challenges to explanatory statement on grounds that statement is "insufficient or unclear"). Petitioner bears the burden of demonstrating that the explanatory statement is insufficient or unclear. *June v. Roberts*, 310 Or 244, 248, 797 P2d 357 (1990).

---

[1] At the time that the committee drafted the explanatory statement, the Secretary of State had not assigned a ballot number to the measure. Accordingly, the committee identified the measure in the statement as "Ballot Measure _____." We have replaced the "_____" with "8," the ballot measure number that the Secretary of State subsequently assigned to the measure.

**4.**    Petitioner's argument arises out of the following paragraph of the measure:

> "Appropriations for state government expenditures in each biennium shall not exceed an amount which is 15 percent of the state's personal income, except as provided in subsection (b) and (c) of this section. For purposes of this section, this state's personal income is total personal income for the two calendar years ending before the beginning of the biennium, as computed by the Federal Government."

The committee's explanatory statement explains that paragraph as follows:

> "Ballot Measure [8] would amend the Oregon Constitution by linking the rate of growth of state government spending to the rate of growth of personal income in the state. The measure would limit all state spending, regardless of the source of the funds, to no more than 15 percent of total personal income of Oregonians earned in the two calendar years immediately preceding the budget period (biennium)."

Petitioner first argues that the initial sentence of the explanatory statement, quoted above, is inaccurate and misleading. Specifically, he contends that the phrase "rate of growth of state government spending" is not derived from any concept found in the measure and that the term "growth" does not appear anywhere in the measure itself. That phrasing, petitioner reasons, will mislead reasonable voters to conclude that the measure would allow state government spending to start at its current level and then limit only the growth of that spending. But, petitioner argues, the measure would not necessarily, or even most probably, have that effect. Relying on state economic and revenue forecasts, petitioner contends that the measure in all likelihood will result in an immediate and substantial *reduction* in the current level of state government spending.

In reviewing explanatory statements, this court's approach has been one of deference. *Sizemore*, 327 Or at 467. Consistent with that approach, we will not resolve disputes over the meaning of a measure. *June*, 310 Or at 247. In this

proceeding, however, the committee does not appear to dispute that the measure, if adopted, in all likelihood would effect a reduction in the current level of state government spending. In fact, the committee has noted the possibility of precisely that outcome. In another part of the explanatory statement, the committee writes:

> "For comparison, the state has recently experienced a spending level of about 18 percent of personal income. The estimated impact of the measure on the 2001-2003 state budget would be to limit expenditures to an amount $5.7 billion less than the projected spending of $32.4 billion."

Having noted that basic agreement concerning the premise that underlies petitioner's argument, the question then becomes whether the challenged phrase is "insufficient or unclear." ORS 251.235. A statement is "insufficient" if it is not impartial or is potentially misleading, *Deras v. Keisling*, 320 Or 1, 5, 879 P2d 850 (1994), and is "unclear" if it is not understandable, *MacAfee v. Paulus*, 289 Or 651, 655, 616 P2d 493 (1980).

■     We agree with petitioner that, if it stood alone, the reference to "growth" in the first sentence of the statement might be misleading and, therefore, be "insufficient." ORS 251.235. A reasonable voter, reading only that sentence, well might conclude, based on that wording, that the measure would *not* effect a reduction in the current level of state government spending. But such an understanding could not survive after the voter read the later paragraph, which makes it clear that, based on present circumstances, the likely outcome of adoption of the measure would be an immediate reduction in state spending. The degree of deference that this court accords explanatory statements requires, at a minimum, that we be satisfied that a statement in an explanatory statement remain insufficient after it is read in the context of the statement as a whole. When it is read in that manner, petitioner has not met his burden of demonstrating that the explanatory statement is insufficient "beyond reasonable argument." *Sizemore*, 327 Or at 467 (internal quotations and citation omitted).

■ Petitioner also argues that use of the term "biennium" in the first sentence of the statement, without additional explanation, is misleading, because that term "may not be familiar to voters." We have considered that argument and reject it. The statement is neither insufficient nor unclear in that respect.

Having considered and rejected each of petitioner's arguments, we conclude that the explanatory statement prepared by the citizens committee is neither insufficient nor unclear. Accordingly, we certify the following explanatory statement to the Secretary of State:

Ballot Measure 8 would amend the Oregon Constitution by linking the rate of growth of state government spending to the rate of growth of personal income in the state. The measure would limit all state spending, regardless of the source of the funds, to no more than 15 percent of total personal income of Oregonians earned in the two calendar years immediately preceding the budget period (biennium).

If the state collects revenues in excess of this limit, the measure would require that those excess revenues be distributed to Oregon taxpayers in proportion to the income taxes they paid in the biennium. Excluded from this distribution are earnings from dedicated investment funds, such as retirement funds or the Common School Fund.

The Legislature could vote to increase spending beyond the limit, but only if the Governor specifically declares an emergency, and three-fourths of the elected members of both the House and the Senate vote for the increased level of spending.

The limit covers state spending from all sources of funds, such as taxes, fees, federal funds, and investment earnings. The measure would exclude from the limit proceeds from state-issued bonds, although it does include the funds appropriated to repay those bonds.

For comparison, the state has recently experienced a spending level of about 18 percent of personal income. The estimated impact of the measure on the 2001-2003 state budget would be to limit expenditures to an amount $5.7 billion less than the projected spending of $32.4 billion.

The measure limits state spending. The measure does not cut state taxes, nor does it direct the Legislature or the Governor how state funds are spent within the new limit.

Ballot measure explanatory statement certified. Under ORAP 1.20(4), and notwithstanding ORAP 9.25(1) and ORAP 14.05, this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at 5:00 p.m. on September 11, 2000, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. Any timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on such petition.