2007-NMCA-140

170 P.3d 1011

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Raul PACHECO, Defendant–Appellant.**

**No. 24,154.**

Court of Appeals of New Mexico.

Aug. 29, 2007.

Certiorari Denied, No. 30,395, Oct. 25, 2007.

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} Defendant was convicted of three counts of criminal sexual penetration of a minor (CSPM) and appeals. In a previous decision, we reversed on grounds that the presence of an interpreter during jury deliberations was unauthorized. *State v. Pacheco,* 2006–NMCA–002, ¶¶ 18, 21, 138 N.M. 737, 126 P.3d 553. The Supreme Court subsequently reversed that decision, and remanded the case to this Court to consider the remaining issues raised by Defendant. *State v. Pacheco,* 2007–NMSC–009, ¶ 36, 141 N.M. 340, 155 P.3d 745. Defendant's claim that the prosecutor made an impermissible comment on his constitutional right to remain silent is dispositive, and we reverse and remand for a new trial.

## BACKGROUND

{2} Police were contacted in relation to a sexual assault allegedly perpetrated by Defendant against M.R., the twelve-year-old daughter of his girlfriend at the time. When he was contacted by the Lea County Sheriff's Department, Defendant agreed to be interviewed. Investigator Harrison conducted the interview at the local substation, after giving the admonitions required by *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."). When confronted with the allegations, Defendant denied touching M.R. in a sexual manner, and mentioned that his father had been in the house on the morning in question. However, Defendant also indicated that his father had left the house in order to take care of maintenance matters at the residential complex where he lived and worked. Several days after the interview Defendant obtained counsel, and following his attorney's advice, Defendant had no further discussions with the police.

{3} At trial, Defendant's father was called as a witness for the defense. He testified that Defendant had not been alone with M.R. at any time on the date in question, because he had remained in the house all day. Defendant's father explained that he had been in the living room, from where he could clearly see Defendant and M.R. watching television and playing video games in Defendant's room. Defendant's father stated that the door to Defendant's room remained open at all times, and he neither saw nor heard anything suspicious.

{4} Defendant also testified at trial. On direct examination, he admitted that M.R. had been left in his care on the date in question, but he denied any wrongdoing.

Defendant further stated that his father was in the house at all pertinent times, and defense counsel then noted the apparent inconsistency between Defendant's trial testimony and Defendant's initial statement to Investigator Harrison. Defendant explained that although initially he had believed his father had left the house, he was not actually sure about his father's movements.

{5} In cross-examination, the prosecutor focused on the discrepancy between Defendant's statement to Investigator Harrison and his trial testimony. He asked whether, sometime after the interview at the substation, Defendant had realized that his father had been in the house throughout the morning in question. He received a vague answer, and the prosecutor stressed the gravity of Defendant's situation. The prosecutor then questioned Defendant:

> [Prosecutor]: ... When you realized that your father had been there all day and had not left, . . . .
>
> . . . .
>
> ... [w]hat did Investigator Harrison say when you told him that?
>
> [Defendant]: He uh, I don't really recall.
>
> [Prosecutor]: Okay, so when you realized that, you went back and you talked to him?
>
> [Defendant]: To who?
>
> [Prosecutor]: Ben Harrison, the man who gave you his business card after you talked to him.
>
> [Defendant]: I don't understand what you're trying to say?
>
> [Prosecutor]: So you.
>
> [Defendant]: I don't understand what you're trying to say.
>
> [Prosecutor]: Never, you never called Ben Harrison back?
>
> [Defendant]: I don't remember, I don't recall. I mean.
>
> [Prosecutor]: Do, do you think that's something you would recall[?][Y]ou can re-

call smelling coffee, listening to the Spanish channel on a given day and you forget?

> [Defendant]: It's a fresh morning, yes sir.
>
> [Prosecutor]: And you don't recall if you called Ben Harrison to say, hey wait, I now remember my father was there the whole time.[1]
>
> [Defendant]: I don't think I ever did call him back and tell him that.
>
> [Prosecutor]: I have no additional questions, your Honor.

{6} Defendant did not object to the foregoing line of questioning. However, in an apparent attempt to remedy the obvious damage, defense counsel elicited Defendant's testimony that he had engaged an attorney shortly after the interview with Investigator Harrison, and his attorney advised him not to contact the police.

{7} In his closing statement, the prosecutor again focused attention on Defendant's failure to call Investigator Harrison back and advise that his father could corroborate his claim of innocence. Specifically, the prosecutor argued:

> We don't ask you to leave your common sense at the door when you become a juror. Common sense, [Defendant] is scared about this trial. [Defendant] is very concerned about this trial. And yet for more than a year [he] has known that his father could absolutely clear him, beyond any doubt, his father was there, can say absolutely, it didn't happen. More than a year and does he call Investigator Harrison and say, [w]ow, hey, I just remembered something, no, I remember, I smelled the coffee and I heard the [television] station and my dad was there the whole day[?] No, he preferred to come to trial. . . . Investigator Harrison was trying to be as fair as he could. I'm sure he would have been very interested in someone who was sitting there the whole day.

---

1. At this point, the transcript indicates that counsel for Defendant interjected with "Your Honor?" The State asserts that the tapes, which are unavailable to this Court, do not reflect that any comment was made. We find the discrepancy to be essentially immaterial. Even if the interjec-

tion was made, counsel's failure either to specify the basis for objection or to seek a ruling render it insufficient to preserve error. *See generally State v. Baca*, 1997–NMSC–045, ¶ 13, 124 N.M. 55, 946 P.2d 1066.

## STANDARD OF REVIEW

{8} Defendant contends that both the prosecutor's line of questioning on cross-examination and the portion of the closing argument quoted above constitute impermissible commentary upon Defendant's silence. We apply de novo review. *See State v. Foster,* 1998–NMCA–163, ¶ 8, 126 N.M. 177, 967 P.2d 852 ("[W]e review de novo the legal question whether the prosecutor improperly commented on Defendant's silence."). Further, because no objection was raised at trial, we review only for fundamental error. *State v. DeGraff,* 2006–NMSC–011, ¶ 12, 139 N.M. 211, 131 P.3d 61 ("In the absence of a timely objection from a defendant, comments on a defendant's ... right to remain silent, are reviewed for fundamental error.").

## DISCUSSION

■■■ {9} Defendant received the standard *Miranda* warnings. These warnings included advice that Defendant had the right to remain silent. *See State v. Salazar,* 1997–NMSC–044, ¶ 60, 123 N.M. 778, 945 P.2d 996 (noting that *Miranda* holds that the United States Constitution requires advice to an accused that he has the right to remain silent as a condition to using incriminating statements made by him in a custodial interrogation). If an accused indicates at any time that he wishes to remain silent, the invocation of that right must be "scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (internal quotation marks and citation omitted); *and cf. State v. Hennessy,* 114 N.M. 283, 288, 837 P.2d 1366, 1371 (Ct.App.1992) (holding that a defendant may exercise the right to remain silent at a later time, even if that right was not initially asserted), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). As the United States Supreme Court has explained:

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (footnote omitted). Accordingly, the State is generally prohibited from impeaching a defendant's testimony with evidence of his silence after receiving *Miranda* warnings. *See Foster,* 1998–NMCA–163, ¶ 14, 126 N.M. 177, 967 P.2d 852 ("[I]t is fundamentally unfair under the United States Constitution to impeach the defendant's testimony by means of evidence of the defendant's invocation of the right to silence after receiving *Miranda* warnings.").

{10} Initially, Defendant did not invoke the right to remain silent. Instead, he voluntarily gave a statement to Investigator Harrison. As a result, the prosecutor was permitted to question Defendant freely about the interview, and to engage in a critical comparison of Defendant's prior statement with his trial testimony. *See, e.g., State v. Loera,* 1996–NMSC–074, ¶¶ 7–9, 122 N.M. 641, 930 P.2d 176; *State v. Garvin,* 2005–NMCA–107, ¶ 24, 138 N.M. 164, 117 P.3d 970; *Foster,* 1998–NMCA–163, ¶¶ 14–17, 126 N.M. 177, 967 P.2d 852; *State v. Johnson,* 102 N.M. 110, 114, 692 P.2d 35, 39 (Ct.App. 1984), *overruled in part on other grounds by Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989).

■■ {11} Defendant's conduct after the interview is a different matter. Following his interview with Investigator Harrison, Defendant obtained counsel. Counsel advised Defendant not to communicate further with the police, and Defendant followed his attorney's advice. Accordingly, Defendant's silence from the time of the interview to the commencement of trial was insulated from prosecutorial comment by considerations of due process. *See generally State v. Martin,* 101 N.M. 595, 600, 686 P.2d 937, 942 (1984) (holding that the right to remain silent applies outside the context of interrogation, throughout the period of time between the receipt of *Miranda* warnings and the commencement of trial); *Foster,* 1998–NMCA–163, ¶ 11, 126 N.M. 177, 967 P.2d 852 ("When a defendant has invoked the right to remain silent after being given *Miranda* warnings, use of that silence by the prosecution at trial

violates due process."). The fact that Defendant had previously given a voluntary statement did not in any way diminish his right to subsequently remain silent and not speak to the police. *Hennessy,* 114 N.M. at 288, 837 P.2d at 1371 ("[A] defendant may exercise the right to remain silent even if that right is not initially asserted.").

{12} We must therefore determine whether the prosecutor engaged in inappropriate questioning or commentary, warranting a new trial. A two-step analysis is applied. First, we must determine "whether the language of the prosecutor's questions on cross-examination and his comments in closing were such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent." *Id.* at 287, 837 P.2d at 1370; *see also DeGraff,* 2006–NMSC–011, ¶ 21, 139 N.M. 211, 131 P.3d 61 (stating that the first inquiry in determining whether fundamental error occurred is whether the prosecutor commented on the defendant's constitutionally protected silence). If the prosecutor's questions or statements constituted improper commentary on Defendant's silence, we must then determine whether there is a "reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted).

{13} In this case, the prosecutor did not comment directly upon Defendant's exercise of the right to remain silent. Instead, the line of questioning on cross-examination and the comments in closing addressed Defendant's silence in a more ambiguous fashion, referring to Defendant's failure to call Investigator Harrison. We must therefore "consider what inference the jury was asked to draw from the defendant's silence and the propriety of that inference." *Id.* ¶ 9.

{14} As quoted at length above, the prosecutor pointedly and repeatedly questioned Defendant about his failure to call Investigator Harrison back, after the initial interview, to inform him about his father's presence in the house on the morning in question. In the course of his closing argument the prosecutor reminded the jury of Defendant's fail-

ure to do so, and suggested that it made no sense. By his questions and comments, the prosecutor was unmistakably implying that if there was any truth to Defendant's assertion about his father's presence in the house, Defendant would have saved himself the trouble and anxiety of trial by contacting the police to supply them with the additional, exculpatory information prior to trial. The courts of this State have repeatedly held that this is impermissible. *Id.* ¶ 10 (observing that prosecutorial comment on a defendant's failure to correct or amend an initial statement to the police is improper because it invites the jury to draw a negative inference from the defendant's failure to give an additional statement); *State v. Garcia,* 118 N.M. 773, 778, 887 P.2d 767, 772 (Ct.App.1994) (observing that "it is fundamentally unfair to assure a suspect that silence will carry no penalty and then, when the suspect offers an explanation at trial, suggest to the jury that anyone with that explanation would naturally have offered it" beforehand); *Hennessy,* 114 N.M. at 288, 837 P.2d at 1371 (holding that cross-examination designed to impeach a defendant's credibility with the implication that he is lying because he failed to return to the police to make another statement unmistakably focuses on the constitutional right to silence, and constitutes error which is compounded if the matter is referenced again in the course of closing statements). This same view has been expressed by the courts of other states. *See, e.g., State v. Brunetti,* 279 Conn. 39, 901 A.2d 1, 30–31 (2006) (observing that prosecutorial questioning about a defendant's failure to contact the police after giving a statement, in order to correct the statement or provide additional information, is improper under the strictures of *Doyle*); *State v. Heller,* 58 Wash.App. 414, 793 P.2d 461, 464–65 (1990) (holding that extensive cross-examination about the defendants' failure to correct initial statements to police constitutes an impermissible comment on the defendant's silence).

{15} The State urges that the "focus" of the prosecutor's questioning was upon the inconsistencies between Defendant's original statement to Investigator Harrison and his testimony at trial. As such, the State con-

tends that no impropriety occurred. We cannot agree. Although the prosecutor mentioned the inconsistency between Defendant's original statement, when he indicated that his father had left the house, and Defendant's testimony at trial, in which he said that his father had remained in the house, this was only briefly noted. Thereafter, as quoted at length above, the prosecutor pointedly and repeatedly questioned Defendant about his failure to call Investigator Harrison back, after the interview and before trial, in order to provide the exculpatory information that he presented at trial. Later, in the course of closing argument, the inconsistency between the initial statement and the testimony was again emphasized. Once again, the prosecutor focused the jury's attention on Defendant's failure to provide a supplemental statement to Investigator Harrison, implying as a matter of "common sense" that if there had been any truth to Defendant's assertion, Defendant would have contacted Officer Harrison to provide the exculpatory information. Viewed contextually, it is clear that the focus of the prosecutor's questions and comments was upon Defendant's silence.

{16} The State suggests that Defendant opened the door to the prosecutor's questions and comments. Although we agree that the aforementioned inconsistency and Defendant's effort to provide an explanation at trial were the proper subjects of inquiry on cross-examination, we fail to see how Defendant could be said to have opened the door to comment on the entirely separate issue of Defendant's failure to make a supplemental pre-trial statement to Investigator Harrison. We have previously held that in general, offering an explanation at trial for a defendant's conduct does not open the door to impeachment of that defendant by the introduction of evidence of his or her post-*Miranda* silence. *See Garcia*, 118 N.M. at 778, 887 P.2d at 772 (rejecting, as inconsistent with *Doyle*, the State's argument that the defendant opened the door to argue his post-arrest silence by asserting an alibi defense, because *Doyle* forbids the use of post-*Miranda* silence to impeach an explanation of a defendant's conduct offered at trial). We have not been persuaded to depart from that general principle in this case.

■ {17} The State also argues that the prosecutor's questions and comments should be regarded as permissible support for a theory of recent fabrication. Although prosecutors may unquestionably endeavor to undermine alibis and other forms of exculpatory testimony by suggesting recent fabrication, they must be circumspect about their approach. A claim of recent fabrication does not give the State carte blanche to engage in otherwise impermissible commentary on a defendant's silence. *See Garcia*, 118 N.M. at 778, 887 P.2d at 772. We therefore reject the State's argument, and conclude that the prosecutor's questioning on cross-examination and argument in the course of closing statements constituted improper commentary on Defendant's silence.

■ {18} This brings us to the second step of the analysis. We must determine whether there is a "reasonable probability · that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *DeGraff*, 2006–NMSC–011, ¶ 21, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). Our review of pertinent authorities indicates that improper prosecutorial questioning and commentary on a defendant's exercise of the constitutional right to remain silent is frequently regarded as a significant factor, sufficiently prejudicial in nature to constitute fundamental error. *See generally State v. Allen*, 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728. This is not uniformly the case, however. If the evidence of guilt is "overwhelming," such that the prosecutorial impropriety is insignificant by comparison, a conclusion that the error is not fundamental may be warranted. *See DeGraff*, 2006–NMSC–011, ¶¶ 21–23, 139 N.M. 211, 131 P.3d 61.

{19} As described at length above, the manifest intent of the questions and comments, and their natural impact on the jury, was to directly impeach Defendant's trial testimony by his post-*Miranda* silence. In light of the central importance of credibility at trial, we must conclude that the prejudicial impact of the prosecutor's conduct was considerable. The evidence against Defen-

dant was far from overwhelming. No physical evidence was presented to support the State's case. M.R. asserted that Defendant assaulted her. Defendant denied ever touching M.R. in a sexual manner. The question of Defendant's guilt therefore depended entirely upon the jury's assessment of the witnesses' credibility. The foregoing circumstances are markedly similar to the conditions presented in *Hennessy*, where the jury's function was essentially reduced to resolving the conflicting testimony by determining witness credibility, and the defendant testified in his own defense. 114 N.M. at 289, 837 P.2d at 1372. Under such circumstances, we held that the prosecutor's comments on the defendant's silence constituted fundamental error. *Id.* We reach the same conclusion in this case.

## CONCLUSION

{20} For the foregoing reasons we reverse Defendant's convictions and remand for a new trial.

{21} IT IS SO ORDERED.

WE CONCUR: JAMES J. WECHSLER, and IRA ROBINSON, Judges.