This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                          **NO. 30,437**

**ANTHONY CASILLAS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Defendant Anthony Casillas appeals from the district court's judgment and sentence convicting him, after a jury trial, of aggravated battery upon a peace officer, a fourth degree felony. He was sentenced as an habitual offender to two and one-half years. Defendant raises two issues on appeal: (1) whether his right to due process was violated when a comment on Defendant's post-*Miranda* right to remain silent was evoked during defense counsel's cross-examination; and (2) whether there was sufficient evidence to support his conviction when the evidence in support of the verdict was circumstantial. We affirm.

**BACKGROUND**

In February 2009, Daniel Etlicher was employed as a detention officer at the Curry County Detention Center. At trial, Etlicher testified to the following. On February 7, 2009, as he entered pod six carrying trash bags, he was struck by an inmate. He explained how this occurred as follows. Each pod has two doors, an outer door, which is a holding area, and an inner door, which places a person on the floor with the inmates. He entered the "alpha door" and shut the door behind him. He radioed to have the second "bravo door" opened, walked through the door, and was pushed by Defendant at the door as he entered the pod. Etlicher knew Defendant, an

2

inmate, through his job and pointed him out in the court room. He remembered Defendant asking him what the bags were for and Etlicher then looked to the left and to the right as he entered the pod, and was struck unconscious. Etlicher stated that the next thing he remembered was sitting up with another officer talking to him and that there was a lot of blood coming out of his mouth. He was taken to the emergency room where he was given CAT scans and X-rays, his cheek was swollen for a month, and five teeth were broken off.

On cross-examination, Etlicher testified that, although there were other inmates in the pod, Defendant was the only one who approached him. He explained that as he entered, Defendant was standing within two feet of him, that Defendant asked him about the trash bags, and that Etlicher looked to the left and to the right and everything went black.

Deputy Dan Marney testified that on February 10, 2009, he was called in to investigate a battery at the jail. He observed Etlicher's injuries and took four photographs that were admitted into evidence as State's exhibits 1-4, and about 3-4 days later he took another two photographs that were admitted as State's exhibits 5 and 6. The security video was played for the jury and admitted as State's exhibit 7. Deputy Marney identified Defendant as the person in the video walking towards the inner door of the pod. Defendant is the only person in the video wearing a white t-

3

shirt, and the video shows Defendant remaining in the doorway of the pod for approximately one minute and twenty seconds. The video also shows that approximately nine seconds later, other inmates look towards the inner door or get up and look towards it, but none of the other inmates respond or act based on what they observe, and they sit back down at their tables. Deputy Marney testified that he talked to another deputy who had been on the scene, read his report, obtained the security video from him that he watched with Etlicher, and obtained Etlicher's medical records.

During cross-examination of Deputy Marney, the following exchange took place:

Defense counsel: Officer, did anyone look at my client's hands to see whether he had any bruises, busted knuckles, scrapes, cuts[,] or anything else indicating that he hit something?
Deputy Marney: Are you talking about the day of the incident sir, or when I dealt with him?
Defense counsel: When you dealt with him did you look at his hands?
Deputy Marney: In the report that I read he was read his *Miranda* rights
. . .
Defendant counsel: Did you look at his hands and look at his knuckles?
Deputy Marney: I did not.
Defense counsel: Did you take any photos of his hands?
Deputy Marney: I did not.

On re-direct, the following exchange took place:

Prosecutor: At the time that you became involved in this case, on February 10, 2009, without going into specifics, please don't go into the specifics of it, but, was [Defendant] available to you for you to interview

4

and talk to?

Deputy Marney: No.

Following redirect, a bench conference was held. Defense counsel argued that he believed Deputy Marney wanted to discuss Defendant's constitutional rights and that Defendant was available by a subpoena for Deputy Marney to obtain photographs of Defendant's hands. Defense counsel's concern was that Deputy Marney's testimony led the jury to believe that Defendant was not available through some other process. The prosecutor pointed out that Defendant had invoked his right to silence and to an attorney, so Defendant could not be interviewed further. Defense counsel agreed but insisted that Defendant's hands were physical evidence and not statements. The prosecutor said that if defense counsel wished to ask Deputy Marney if he could have obtained a search warrant to photograph Defendant's hands, that would be proper. Defense counsel said that he would pose that question to Deputy Marney. During the recross-examination of Deputy Marney, the following exchange took place:

Defense counsel: Officer[,] you said that my client's hands were not available to you to look at. He was an inmate correct?

Deputy Marney: That is correct.

Defense counsel: He remained in detention after this?

Deputy Marney: Yes.

Defense counsel: You have powers of subpoena, excuse me[,] search warrant to get items like that correct?

Deputy Marney: Yes sir, he had been read his *Miranda* rights and didn't want to talk. So you're asking me why I didn't talk to him, that's why.

Defense counsel requested a mistrial on grounds that the prosecution had commented

5

on Defendant's silence. The prosecutor argued that the exchange was not grounds for a mistrial, stating that defense counsel had "opened the door." The district court denied a mistrial and asked defense counsel if he wanted the jury to be given a curative instruction. Defense counsel responded that "once the bell has been rung, you can't really un-ring it." Defense counsel further stated that he would not ask the district court to admonish the jury and was only asking for a mistrial.

Following the State's case-in-chief, defense counsel moved for a directed verdict, arguing that a jury verdict of guilty would be based on "speculation": "We have nothing but speculation that this gentleman got injured, he does not know how he was struck, with what, by whom, he has injuries but we have no connection to my client." The district court denied the motion, stating that the video does not show a blow being struck but that it does show Defendant in the direct proximity of Etlicher. The State rested. Defendant did not present witnesses. The jury deliberated from 1:00:25 p.m. to 1:28:23 p.m., returning a verdict of guilty. This appeal followed.

**DISCUSSION**

**Right to Silence**

Defendant contends that his Fifth Amendment right to silence was violated "when a State witness blurted that . . . Defendant had invoked *Miranda* and would not speak with him." Defendant argues that Deputy Marney's statement that Defendant

6

had been read his *Miranda* warnings, and he didn't want to talk in response to a simple question about whether he could have obtained a warrant, was nonresponsive and resulted in a deliberate comment on Defendant's silence. Defendant further argues that the comment on silence also improperly shifted the burden of proof to Defendant and that it cannot be deemed harmless under the circumstances of this case. We disagree.

We review the district court's decision to deny a mistrial for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437, 176 P.3d 1169. The legal question of whether the prosecution improperly commented on Defendant's silence is reviewed de novo. *State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011.

The Fifth Amendment's due process clause protects against prosecutorial comment on a defendant's post-*Miranda* exercise of his right to remain silent. *See State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211, 131 P.3d 61. "When a defendant has invoked the right to remain silent after being given *Miranda* warnings, use of that silence by the prosecution at trial violates due process." *State v. Foster*, 1998-NMCA-163, ¶ 11, 126 N.M. 177, 967 P.2d 852. An impermissible prosecutorial comment on silence includes statements elicited by the prosecutor from the witness and the prosecution's use of a defendant's silence to impeach his

credibility or create an inference of guilt in the minds of the jury. *Id.* A deliberate comment on silence elicited by the prosecution and used to create an inference of Defendant's guilt is difficult to cure by instructing the jury to disregard it. *See, e.g.*, *State v. Gutierrez*, 2007-NMSC-033, ¶ 23, 142 N.M. 1, 162 P.3d 156 (discussing that some prosecutorial comments are so highly prejudicial that a curative instruction may not sufficiently remove the impression created by the prosecutor's comments on a defendant's silence from the minds of the jury, and in fact may magnify an impression).

We have recognized, however, that "indirect comments, both those that are ambiguous[] and those inadvertently elicited by the prosecutor from a witness, are less likely to call a jury's attention to the defendant's exercise of his rights." *DeGraff*, 2006-NMSC-011, ¶ 8 (internal citation omitted). Moreover, we have found no reversible error where defense counsel opened the door, trying to use his client's silence for tactical advantage, *see State v. Padilla*, 1996-NMCA-072, ¶ 15, 122 N.M. 92, 920 P.2d 1046, or, for example, where the remarks were invited by a defendant's opening statement, *see State v. Smith*, 2001-NMSC-004, ¶¶ 39-40, 130 N.M. 117, 19 P.3d 254.

Relying on *State v. Wisniewski*, 103 N.M. 430, 435, 708 P.2d 1031, 1036 (1985), Defendant argues that although "it was not the State who actually asked the

question, [Deputy Marney], as an agent of the State, is part of the prosecution team." While we agree that for purposes of *Brady* violations, the term "prosecution" includes the prosecutor, his office, law enforcement personnel, and other arms of the state involved on the investigative aspect of the case, Defendant provides no authority for expanding this concept to violations of the Fifth Amendment. Absent such authority, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Accordingly, we decline to entertain this argument.

Defendant also argues that it was the State who suggested the question that was asked by the defense, that Deputy Marney's answer was nonresponsive and, thus, the comment was a violation of Defendant's right to remain silent. We review the record. At the outset of his cross-examination, Deputy Marney had already admitted that he did not look at Defendant's hands or knuckles or take photographs of Defendant in his investigation following the incident. At that juncture, the defense had made its point to the jury that Deputy Marney's investigation could have been better or was not thorough enough, which could operate, as the defense intended, to further cast doubt in the jury's mind on whether Defendant was the inmate who attacked Etlicher.

On redirect, the prosecutor made every effort to ensure that Deputy Marney did not make an impermissible comment on Defendant's silence: "At the time that you became involved in this case, on February 10, 2009, without going into specifics,

9

please don't go into the specifics of it, but, was [Defendant] available to you for you to interview and talk to?" At the bench conference that followed, the prosecutor articulated the danger of continuing to press Deputy Marney as to why he had not met with Defendant to examine his hands and photograph them—because Defendant had already been read and had invoked his *Miranda* rights. We also observe that although the questions regarding a subpoena was suggested by the prosecution, it was defense counsel's choice to continue the questioning along this line knowing the witness's position as to why he ceased contact with the Defendant. *State v. Baca*, 89 N.M. 204, 205, 549 P.2d 282, 283 (1976).

We conclude that the prosecutor did not intentionally elicit the comment on Defendant's exercise of his *Miranda* rights. Moreover, the prosecution did not exploit Deputy Marney's answer in taking further testimony, nor argue it as evidence of Defendant's guilt in closing arguments. *See, e.g.*, *Baca*, 89 N.M. at 205, 549 P.2d at 283 (involving unsolicited statements by a policeman and holding that the prejudicial impact occurs when the prosecutor is directly responsible for the improper comment on a defendant's silence). We remain concerned that a prosecution witness, especially a law enforcement officer involved in the prosecution of a defendant, will utilize cross-examination by defense counsel for this improper purpose. Where it appears clear that a violation of the defendant's Fifth Amendment right to remain silent during

a police investigation is injected into a witness's answer that is unrelated to the line of questioning being asked by defense counsel and no door was previously opened by the defense to allow such an answer, a violation necessitating a mistrial may potentially occur. Our review of the circumstances in this case do not fit within this criteria. We affirm the district court's decision to deny Defendant's motion for a mistrial. Finding no error, we need not address the issue of plain or harmless error.

**Sufficiency of the Evidence**

Defendant contends that the district court erred in denying the motion for a directed verdict because the evidence was insufficient to support a charge of aggravated battery due to the complete circumstantial nature of the evidence. Defendant also argues that the circumstantial evidence cannot support the jury verdict in this case. Again, we disagree.

"Our review of the denial of a directed verdict motion asks whether sufficient evidence was adduced to support the underlying charge." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted); *see State v. Sutphin*,

107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed that is consistent with a finding of innocence. *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285. Moreover, "[w]e review sufficiency of the evidence on appeal from a highly deferential standpoint." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. "The evidence is to be viewed in the light most favorable to the [s]tate, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *Id.* "It is our duty to determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *Id.*

In order to convict Defendant of aggravated battery upon a peace officer, the jury was instructed that the State must prove each of the following elements of the crime beyond a reasonable doubt: (1) Defendant unlawfully touched or applied force to Etlicher by hitting striking or kicking him; (2) Defendant's conduct caused injury to Etlicher; (3) Defendant intended to injure Etlicher; (4) Defendant caused Etlicher painful temporary disfigurement; (5) at the time, Etlicher was a peace officer and was performing the duties of a peace officer; and (6) this happened in New Mexico on or about February 7, 2009. *See* UJI 14-2214 NMRA; NMSA 1978, § 30-22-25(B) (1971).

In this case, Etlicher, a detention officer on duty at the Curry County jail, testified that as he entered the pod, Defendant approached him and asked about the trash bags he was carrying. Etlicher then looked right and left and was struck unconscious. Although the security video does not show the blow, it shows Etlicher falling through the doorway, and it confirms that Defendant, and only Defendant, approached Etlicher and was in close proximity, within two feet of him, at the time he blacked out from a blow to the face. Etlicher identified Defendant as the person in the video who approached him, asked about the trash bags, and was standing within two feet of him just prior to the blow and blackout. Deputy Marney also identified Defendant as the person in the video who approached Etlicher. At the time Etlicher fell to the ground, the video shows other inmates looking toward the doorway. The video also shows that no inmates, other than Defendant, approached Etlicher as he entered the pod or the doorway where he lay after the blow was struck. Etlicher testified that when he regained consciousness, blood was streaming out of his mouth. The State presented photographs of the effects of the blow to Etlicher's face, including a black eye and swollen, bruised check. At trial, Etlicher showed the jury that his teeth were broken off. Our review of the testimony presented in support of the verdict does not support Defendant's assertions that Defendant's conviction is based on juror "speculation." While the evidence is circumstantial, it contains several implicating

details that allowed the jury to rationally conclude beyond a reasonable doubt that it was Defendant who attacked the officer and knocked him unconscious.

We hold that the district court did not err in denying Defendant's motion for a directed verdict, and that the jury's verdict, convicting Defendant of aggravated battery upon a peace officer, is based on substantial evidence.

**CONCLUSION**

We affirm Defendant's conviction and the district court's judgment and sentence.

**IT IS SO ORDERED.**


_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**TIMOTHY L. GARCIA, Judge**