This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. A-1-CA-34330**

**MICHAEL FARMER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

**{1}** This matter comes before us on remand from the Supreme Court to consider our memorandum opinion filed herein on June 28, 2017, in light of its disposition in *State v. Baroz*, 2017-NMSC-030, 404 P.3d 769. *State v. Farmer*, No. S-1-SC-36550, filed December 18, 2017. We withdraw our memorandum opinion filed herein on June 28, 2017, and substitute the following in its stead.

**{2}** Following an altercation involving a shotgun, Defendant was convicted of one count of aggravated battery with a deadly weapon contrary to NMSA 1978, Section 30-3-5(A), (C) (1969), and one count of aggravated assault with a deadly weapon contrary to NMSA 1978, Section 30-3-2(A) (1963). At sentencing, Defendant received two one-year firearm enhancements pursuant to NMSA 1978, Section 31-18-16(A) (1993).

**{3}** Defendant appeals, contending: (1) the firearm enhancements violate double jeopardy; (2) the firearm enhancements must be vacated because the special interrogatory required by Section 31-18-16(C) was not submitted to the jury; (3) the prosecutor committed plain and fundamental error by eliciting testimony that constituted an impermissible comment on Defendant's right to remain silent; and (4) the prosecutor committed fundamental error in disregarding the district court's rulings and arguing that Defendant conspired to frame his stepson for the shootings. We affirm. Because this is a memorandum opinion, we only set forth the facts that are directly pertinent to the issues.

# I. BACKGROUND

{4} About a month prior to June 10, 2013, Ben Florez (Ben) and his wife Gabriella had an altercation with Defendant's stepson, Joe Paul Martinez, who was married to Ben's sister, Amanda. Ben and Gabriella went to the Martinez' home after Amanda told Ben that Joe Paul had beat her. When they arrived, Joe Paul physically assaulted Gabriella. Ben and Joe Paul then fought each other. Ben and Joe Paul did not have any more contact with each other until June 10, 2013.

{5} On June 10, 2013, Ben and Gabriella drove to the home of Ben's mother, Sally Moreno, to pick up their son. Sally lived across the street from Defendant. When Ben and Gabriella arrived at Sally's home, they saw Amanda sitting in her truck parked on the street in front of Defendant's home. Amanda and Joe Paul had been arguing earlier, and Joe Paul had locked the gate to the fence surrounding Defendant's house. Joe Paul was inside Defendant's house taking a shower and would not let Amanda in. Gabriella went to speak to Amanda while Ben went to Sally's house to get their son. Sally told Ben that his son was taking a bath and that she would take him to Ben's home later.

{6} Joe Paul came out of Defendant's house in his boxers and unlocked Defendant's gate. Defendant and Joe Paul then started yelling and swearing at Ben, so Ben and Gabriella decided to leave and avoid a confrontation. After Ben and Gabriella got in Ben's truck, Ben changed his mind and decided to get his son because he did not want

3

to have to deal with Defendant later. Ben went back to Sally's house, and when he got out of his truck, Defendant and Joe Paul were now swearing at Amanda. Ben tried to get Amanda to leave with him and Gabriella, and Defendant and Joe Paul started yelling at Ben again.

{7}     At some point, Defendant went into his home, retrieved his shotgun, returned and stood next to Joe Paul at the gate. Defendant testified that Ben was about fifteen to twenty feet away from him in the street and that Gabriella was standing by Defendant's fence yelling at him. Ben, Amanda, Gabriella, and Sally then heard Defendant say "I got something for you motherf****er!" Defendant shot Ben with his shotgun, and then pointed the shotgun at Gabriella. Sally testified that she saw Defendant pick something up from the ground after he shot Ben, but she did not know what it was.

{8}     Sergeant Rusty Briscoe of the Roswell, New Mexico Police Department was one of the first officers at the scene. Sergeant Briscoe reported that Defendant volunteered, without being questioned, that Ben was harassing him, and about the events leading up to the shooting, including his claim that Joe Paul had taken the shotgun from Defendant and shot Ben. Police searched Defendant's home and Sally's home for the shotgun, but it was never found. A spent shotgun shell was found in Joe Paul's room in Defendant's home, on a dresser right next to Joe Paul's wallet, but no shell was ever recovered outside where the shooting had taken place.

**{9}** Defendant was taken to the police station, and after being advised of his *Miranda* rights by Detective Alberto Aldana, Defendant said he understood his rights, and agreed to talk to Detective Aldana about what had happened. Defendant was arrested and charged with aggravated battery and aggravated assault. At Defendant's first appearance on June 12, 2013, counsel was appointed to represent Defendant. Defendant was then released from custody after posting bond on June 21, 2013. After his release, Defendant repeatedly called Detective Aldana to tell him that Joe Paul's wife Amanda told Defendant that she had stolen Defendant's shotgun from his truck. Defendant did not file a police report for the theft "until two weeks after the shooting because he was incarcerated."

**{10}** At trial, Defendant testified and claimed that Ben was waving a gun at him so he went and got his shotgun. Defendant testified that after he got his shotgun, he thought that it was a "wrong move" and was going to put it back. However, he testified, when he went to take the shotgun back into his home, Joe Paul grabbed the gun and shot Ben. Defendant further testified that Joe Paul told Amanda to meet him in the alley, and Joe Paul took off running with the shotgun. Amanda testified that she and Joe Paul immediately left in her truck, and she was driving. She said Joe Paul was next to her in his boxers, and he did not have anything in his hands. Joe Paul testified and denied that he ever tried to pull the shotgun away from Defendant. Joe Paul said that he left as soon as the shot was fired, and he left in his boxers and t-shirt because

5

he is a felon and is not supposed to be around firearms. In an interview with Detective Aldana, Joe Paul said that his family wanted him to take the blame for the shooting.

{11} The jury found Defendant guilty of aggravated battery with a deadly weapon on Ben, and aggravated assault with a deadly weapon on Gabriella. After credit for time served, Defendant was sentenced to serve a total of five years, seventeen months, and three days at the New Mexico Department of Corrections. The sentence on each count was enhanced by one year under Section 31-18-16, known as the firearm enhancement statute. Defendant appeals.

## II. DISCUSSION

### A. Double Jeopardy

{12} We first address Defendant's argument that double jeopardy prohibits application of the firearm enhancement to his conviction for aggravated battery with a deadly weapon and his conviction for aggravated assault with a deadly weapon, because use of a firearm is an element of each of these crimes. *See Swafford v. State*, 1991-NMSC-043, ¶ 6. 112 N.M. 3, 810 P.2d 122. Specifically, Defendant contends that adding the firearm enhancement to these convictions violated his right to be free from multiple punishments in violation of the Double Jeopardy Clause of the Fifth Amendment.

{13} Section 31-18-16(A) provides: "When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic

sentence of imprisonment prescribed for the offense in [NMSA 1978], Section 31-18-15 [(2007)] shall be increased by one year, and the sentence imposed by this subsection shall be the first year served and shall not be suspended or deferred[.]" Following the analysis mandated by *Swafford*, our Supreme Court in *Baroz* rejected the defendant's argument that imposition of the firearm enhancement violates double jeopardy where the use of a firearm is an element of the underlying conviction of aggravated assault with a deadly weapon. *Id*. ¶¶ 20-27. We conclude that *Baroz* is directly applicable to Defendant's sentence for aggravated assault, and that its reasoning applies to Defendant's sentence for aggravated battery. We therefore reject Defendant's argument under this point.

**B.      Failure to Submit a Special Interrogatory**

{14}      Section 31-18-16 (C) states in pertinent part: "If the case is tried before a jury and if a prima facie case has been established showing that a firearm was used in the commission of the offense, the court shall submit the issue to the jury by special interrogatory." Because no interrogatory was submitted to the jury in this case, Defendant contends that the firearm enhancement must be reversed. Defendant further argues that although he did not object to the omission, it resulted in an illegal sentence which the district court did not have jurisdiction to impose. We disagree.

{15}      Count 1 of the information charges aggravated battery with a deadly weapon and alleges in pertinent part that Defendant "did touch or apply force to Ben Florez

7

with a deadly weapon." The jury was instructed that in order to find Defendant guilty of this charge, it was required to find beyond a reasonable doubt that Defendant "did touch or apply force to Ben Florez by shooting him with a firearm, which is a deadly weapon[.]" Similarly, count 4 charges aggravated assault with a deadly weapon and alleges that Defendant "did assault or strike at Gabriella [Florez] with a deadly weapon[.]" The jury was instructed in pertinent part that to find Defendant guilty of this charge, it was required to find beyond a reasonable doubt that "[D]efendant pointed a firearm at Gabriella [Florez]" and that Defendant "used a firearm, which is a deadly weapon." While the special interrogatory required by Section 31-18-16 (C) was not given, the instructions given to the jury required the jury to find beyond a reasonable doubt that Defendant used a firearm to commit aggravated battery and to commit aggravated assault. This is the same finding the jury would have been required to make in a special interrogatory under UJI 14-6013. We therefore conclude there was no error. *See State v. Charlton*, 1992-NMCA-124, ¶¶ 27-29, 115 N.M. 35, 846 P.2d 341 (holding there was no error because although the special interrogatory given to the jury did not require it to find beyond a reasonable doubt that the defendant used a firearm, the elements instruction given to the jury required it to find beyond a reasonable doubt that the defendant used a .25 caliber semi-automatic handgun to commit the crime).

**C. Post-*Miranda* Silence**

8

{16} Defendant argues that the prosecutor committed plain and fundamental error in eliciting Defendant's post-arrest, post-*Miranda* silence as evidence that Defendant was fabricating a story. "We review de novo the legal question regarding whether the prosecutor improperly commented on [the d]efendant's [post-*Miranda*] silence." *State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011 (alteration, internal quotation marks and citation omitted). In addition, because there was no objection made at trial, our review is limited to whether fundamental error was committed. *Id.* Whether fundamental error was committed "rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862 (internal quotation marks and citation omitted).

{17} To determine whether the prosecutor engaged in improper questioning to constitute misconduct, we follow a two-step process. First, we examine whether the language of the prosecutor's questions were such that the jury "would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent." *Pacheco*, 2007-NMCA-140, ¶ 12 (internal quotation marks and citation omitted). Second, if we determine that the prosecutor's questions constituted an improper comment on Defendant's silence, we then determine "whether there is a reasonable probability that the error was a significant factor in the jury's deliberations

in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted).

**{18}** We begin with the first inquiry: whether the prosecutor's question constituted a comment on Defendant's constitutionally protected silence. The question occurred in the following context. Sergeant Briscoe, one of the first officers on the scene, testified that Defendant volunteered to him that after he came out of his house with the shotgun, Joe Paul took it away from him and shot Ben. Sergeant Briscoe testified that the homes of Defendant and Sally were searched and the shotgun was not found. Defendant was arrested and taken to the police station, and Defendant voluntarily gave a statement to Detective Aldana after Detective Aldana advised Defendant of his *Miranda* rights. Defendant told Detective Aldana that he and Joe Paul struggled with the shotgun and it went off, and he did not remember what happened to the shotgun. Detective Aldana's testimony continued that about two weeks later, Defendant called Detective Aldana and reported that Amanda had broken into his house and stolen the shotgun. The prosecutor first clarified that Defendant reported the alleged theft on June 28, 2013, which was actually more than two weeks after the incident. Defendant contends that the prosecutor commented on Defendant's silence when he then asked: "Now, since you are the lead investigator on this case and you have investigated these cases, what do you feel about the validity of that report from [Defendant]?" Detective Aldana answered, "that [Defendant] knew where the shotgun was all along, and that

10

Joe [Paul] never took it." Further, when asked if he believed that Amanda had actually come and taken the shotgun, Detective Aldana answered "no."

{19}     Defendant argues that because he was incarcerated for two weeks after he received the *Miranda* warnings from Detective Aldana, the prosecutor's question called attention to Defendant's right to remain silent during that two-week period. We disagree. The prosecutor asked Detective Aldana about Defendant's report of the alleged theft, and what that report meant to him. The prosecutor did not ask whether, nor did the question suggest, that any meaning should be attributed to Defendant exercising his right to remain silent before he voluntarily called Detective Aldana and reported the alleged theft. Moreover, the prosecutor made no reference to Defendant's post-*Miranda* silence in the closing arguments. Therefore, we conclude that the jury would not "naturally and necessarily have taken" the prosecutor's question "to be comments on the exercise of the right to remain silent." *Pacheco*, 2007-NMCA-140, ¶ 12 (internal quotation marks and citation omitted). Because we determine that the prosecutor's question did not constitute an impermissible comment on Defendant's constitutional right to remain silent, there is no need to consider the second factor set forth in *Pacheco*. In light of what we have already observed, the question not objected to, did not rise to the level of fundamental error. We therefore reject Defendant's argument under this point.

**D.     Prosecutorial Misconduct**

11

{20}    Defendant argues that the prosecutor committed prosecutorial misconduct in closing argument by disregarding the district court rulings in arguing that Defendant conspired to frame Joe Paul for the shooting. Defendant concedes that this argument was not preserved at trial and asks that we review the prosecutor's conduct for fundamental error.

{21}    When an issue of prosecutorial misconduct in closing argument has not been properly preserved by a timely objection at trial, we have discretion to review the claim on appeal for fundamental error. *State v. Trujillo*, 2002-NMSC-005, ¶¶ 52, 60, 131 N.M. 709, 42 P.3d 814. Prosecutorial misconduct in arguments to the jury constitutes fundamental error when it is egregious and so prejudicial and persuasive as to affect the jury's verdict, thereby depriving the defendant of a fair trial. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. Fundamental error only applies to closing arguments when a defendant's guilt is so doubtful as to shock the conscience, or the error implicates the fundamental integrity of the judicial process. *State v. Sosa*, 2009-NMSC-056, ¶ 35 147 N.M. 351, 223 P.3d 348.

{22}    Defendant points to an instance in which the prosecutor asked Amanda if she had been pressured to implicate Joe Paul in the shooting, and she answered that Defendant's wife did on three occasions. In addition, Defendant points out that through the prosecutor's questioning, Detective Aldana testified that Joe Paul told him that his "family" was pressuring him to take the blame for the shooting. Defendant

contends that these items of evidence were not admissible. In addition, Defendant points to two instances in which the prosecutor asked Detective Aldana about whether placement of the spent shotgun shell in Joe Paul's room was a "set-up" and the district court sustained objections to the questions. Defendant therefore argues that in violation of the rules of evidence and the district court rulings, the prosecutor improperly argued in closing argument (1) that Defendant planted the spent shotgun shell in Joe Paul's room and then pointed it out to the police; and (2) that Defendant tried to get Joe Paul to take the blame for the shooting.

{23}    With regard to the spent shotgun shell, the following evidence was admitted at trial. Defendant admitted he owned the shotgun that was used in the shooting, and a box of ammunition for the shotgun was found in Defendant's room. The shotgun was fired once, and Sally saw Defendant bend down and pick up something off the ground after the shooting. Defendant testified that after the shooting, he went back into his house, and there is no evidence that Joe Paul went back into the house after the shooting. The spent shotgun shell was found in Defendant's house on a dresser next to Joe Paul's wallet right after the shooting. No other spent shell was found at the scene of the shooting following a thorough search. Based on the foregoing evidence, which Defendant does not contend was inadmissible, the prosecutor's argument that Defendant planted the spent shotgun shell on Joe Paul's dresser next to his wallet was permissible. "During closing argument, both the prosecution and defense are

13

permitted wide latitude[.]" *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. Moreover, "[s]tatements having their basis in the evidence, together with reasonable inferences to be drawn therefrom, are permissible and do not warrant reversal." *State v. Herrera*, 1972-NMCA-068, ¶ 8, 84 N.M. 46, 499 P.2d 364 (internal quotation marks and citation omitted). *See State v. Jimenez*, 2017-NMCA-039, ¶ 75, 392 P.3d 668 (reiterating these principles).

{24}     With regard to the argument that Defendant tried to get Joe Paul to take the blame for the shooting, the evidence was clear that from the beginning, Defendant claimed that Joe Paul shot the shotgun, and he later claimed that Amanda had broken into his house and stolen the shotgun. Thus, even if we assume that the evidence attributed to Defendant's wife on three occasions pressuring Amanda to implicate Joe Paul, and the evidence that Joe Paul told Detective Aldana that his "family" was pressuring him to take the blame was inadmissible, and that argument based on this evidence was therefore improper, there was no fundamental error in light of Defendant's repeated statements that Joe Paul did the shooting and his attempts to implicate Joe Paul in stealing the shotgun. Even if we assume misconduct, therefore, it was not so prejudicial and persuasive as to affect the jury's verdict, thereby depriving Defendant of a fair trial. Moreover, the evidence we have set forth in this opinion demonstrates that Defendant's guilt is not so doubtful as to shock the conscience or bring into doubt the integrity of the judicial process leading to

Defendant's convictions. We therefore conclude that the prosecutor did not commit fundamental error in arguing to the jury that Defendant tried to blame the aggravated battery of Ben and the aggravated assault of Gabriella on Joe Paul.

{25} The prosecutor's closing argument neither rose to the level of fundamental error nor justifies setting aside the jury's verdict. We therefore reject Defendant's arguments under this point.

**CONCLUSION**

{26} The judgment and sentene of the district court is affirmed.

{27} **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**TIMOTHY L. GARCIA, Judge**